Jessie Joe DAVIS, Jr., Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13181.

Court of Criminal Appeals of Oklahoma.

Dec. 12, 1962.

Ed Morrison, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Owen J. Watts, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

Jessie Joe Davis, Jr., was charged in the district court of Tulsa County with carrying on or about his person a deadly weapon, after having been previously convicted of a felony.

The accused was prosecuted under the provisions of Title 21 O.S.1961 § 1283, which reads:

"It shall be unlawful for any person having previously been convicted of any felony in any court of a state or the United States to carry on his person, or in any vehicle which he is operating, or in which he is riding as a passenger, any pistol, imitation or home-made pistol, machine gun, sawed-off shotgun or rifle, or any other dangerous or deadly firearm which could be as easily concealed on the person, in personal effects or in an automobile, as a sawed-off shotgun."

Accused was tried by a jury, found guilty and his punishment fixed at three years in the state penitentiary. Appeal has been perfected to this court.

The plaintiff in error, defendant below, filed a motion to suppress any and all evidence obtained by virtue of a search of his automobile. Evidence was heard on this motion, the defendant offering as witnesses the officer making the arrest, and the officer making the search of the automobile. The court overruled the motion, and the case proceeded to trial on the merits.

In his brief the defendant argues two assignments of error:

"I. Error of the court in failing to sustain the defendant's motion to suppress as evidence the firearm admitted in evidence upon the ground that such evidence was seized as an incident to an unlawful search and seizure.

"II. Error in that the statute upon which the charge is laid is unconstitutional in that it is discrimatory, arbitrary and capricious and thus deprives the defendant of due process of law and denies to him the equal protection of the laws, in violation of the constitutions of the United States and the State of Oklahoma."

Frank Sawyer, a police officer of the city of Tulsa, testified that he was alone in his car, patrolling, about 5 o'clock in the afternoon of July 22, 1961, and received a call from his dispatcher, directing him to go to a certain address, where the defendant, Jessie Joe Davis, Jr., had threatened a man with a sawed-off shotgun. He was given a

description of the car the suspect was driving, and located it between 7 and 8 o'clock. He called in to his dispatcher that he was following the car, and asked for assistance. This defendant drove the car into an alley, and officer Sawyer followed and arrested him, charging him with operating his truck without taillights. The officer asked the accused to get out of his car, which he did, and accused was standing near the police car when officer Charles M. Goddard came up. Assisting officer Frank Sawyer, officer Goddard searched the truck, and found the gun under the seat. In the meantime, several other officers had arrived, in answer to Officer Sawyer's call for assistance. Defendant was taken to the police station, and charges were filed the next day.

Wayne Edmunds, police corporal assigned to the detective division of the city of Tulsa, testified that he saw the defendant the next morning after his arrest. Alvin Jones, detective, was with witness, and they talked with the defendant about the shotgun. He told them that he had had the gun in his possession, and had been carrying it in his car for approximately one month. He stated that the gun had been given to him by Bill Strickland, and when they indicated they would contact Strickland, accused told them he had moved to Kansas. Accused refused to give a signed statement. Detective Alvin Jones corroborated the testimony of officer Edmunds.

The county attorney in his opening statement described the gun as a 12 gauge shotgun with the handle and the barrel sawed off, until it was only 12 to 15 inches long overall including the stock and barrel. The gun was introduced in evidence, and with the permission of the court, was handed to the jury for examination, thus giving them an opportunity to see that both the handle and barrel had been sawed off. A live, 12 gauge shotgun shell, found in the gun at the time it was recovered, was also introduced in evidence.

Proper proof was made of two prior convictions of the defendant in Tulsa County, wherein he was charged with burglary, second degree, and in which he entered pleas of guilty and was sentenced in each case to two and one-half years in the penitentiary, the sentences to run concurrently.

The defendant testified that he was 24 years of age, admitted the two prior felony convictions; stated that the officer arresting him told him the reason for the arrest was that he had no taillight, and started writing out a ticket and that above five other officers came up. Officer Goddard found the gun under the seat of the truck he was driving. That the truck did not belong to him, and that the gun belonged to a friend of his. That since defendant was placed in jail his friend had visited defendant in the jail and told him that the gun belonged to him. That the friend, Bill Strickland, lived in Coffeyville, Kansas. That defendant did not know the gun was in the truck at the time the officers found it; denied that he had had the gun in his hand that afternoon, and said that he had been using the truck about a month.

On rebuttal the state introduced as a witness Ferris Rhoden, who testified that the defendant was married to his step-daughter, that defendant was at the home of witness the afternoon in question and had a sawed-off shotgun in his hands.

The defendant offered one instruction, which was for a directed verdict. No objection or exception was made to any of the instructions given, and no question is raised with reference thereto.

In considering the first proposition presented for reversal, we must examine the statutes on arrest.

Title 22 O.S.1961 § 196 reads:

"A peace officer may, without a warrant, arrest a person:

"1. For a public offense committed or attempted in his presence.

"2. When the person arrested has committed a felony, although not in his presence.

"3. When a felony has in fact been committed, and he has reasonable cause

for believing the person arrested to have committed it.

"4. On a charge, made upon reasonable cause, of the commission of a felony by the party arrested."

Construing the last sub-section of this statute, this court said in State v. Chronister, Okl.Cr., 353 P.2d 493:

"An officer may arrest at nighttime, without a warrant, any person whom he has reasonable cause for believing to have committed a felony, and is justified in making the arrest though it afterwards appear that the felony had not been committed.

"The use of the term 'probable cause' or 'reasonable cause' itself imports that there may not be absolute irrefutable cause. If the facts are such that a reasonably prudent man would have believed accused guilty, and would have acted upon that belief, a police officer is justified in making an arrest without warrant, although subsequent events prove that no offense had been committed, or if committed, that accused had no connection with it, where the statute authorizes arrest without warrant when the officer has reasonable grounds for believing that the person arrested had committed a felony, although not in his presence.

"For the purpose of preserving the peace and to prevent crime, a peace officer or private citizen may make reasonable inquiry of persons coming under his observation or brought to his knowledge under circumstances which reasonably suggest that a crime has or is about to be committed."

█ The facts of this case clearly bring the arrest within the provisions of the foregoing statute. The arrest was made on information received from a reliable source that a felony had been and was being committed by the defendant herein, a person having been formerly convicted of a felony, and being in the possession of a loaded sawed-off shotgun, with which a public dis-

play and use had been made. It is apparent therefore that the officer needed no further authority to make the arrest herein.

As a reinforcement for his belief that the defendant was so armed he called for assistance, over his radio. The fact that officer Sawyer may have arrested the defendant for driving without taillights (which may appear to defense counsel to have been a subterfuge), is of no consequence, since under the law the officer was authorized to arrest for the felony. In any event, whether the arrest was for driving without taillights or for the felony, presented a question for the trial court on disputed evidence. The fact that he may have thought to arrest for driving without taillights was better under the conditions, since he was alone when the arrest was made, does not defeat his right to search for the sawed-off shotgun. The arrest in either event, being within the foregoing statutes, was lawful and the search that followed therefore proper under the law.

In Doughty v. State, 46 Okl.Cr. 83, 283 P. 1032, we held:

"The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime, and to search the place or automobile where the arrest is made in order to find and seize things connected with the crime as its fruits, or as the means by which it was committed, or which may be used as evidence in the trial, is one conferred upon officers by the law of this state."

█ See also Coffelt v. State, 36 Okl.Cr. 365, 254 P. 760; Reutlinger v. State, 29 Okl.Cr. 290, 234 P. 224; and also Renfro v. State, Okl.Cr., 372 P.2d 45, where we said:

"Where a defendant is lawfully arrested, and his automobile searched, the search made incident to such lawful arrest is not an invasion of the defendant's constitutional rights."

Is thus appears that under the facts here involved, both the arrest and the search

being legal, the trial court did not err in refusing to sustain the defendant's motion to suppress.

■ It is not necessary for us to extend the discussion on the claim of unconstitutionality of the provisions of 21 O.S.1961 § 1283 further than to cite and quote from Renfro v. State, supra, holding:

"Statute prohibiting a person convicted of a felony from owning or having in his possession a firearm capable of being concealed upon the person does not arbitrarily deny ex-convicts rights and privileges which others possess and does not violate equal protection clause of state and federal constitutions, and classification is not capricious or irrelevant to the legislative purpose."

For the foregoing reasons, the judgment and sentence of the district court of Tulsa County is affirmed.

NIX, P. J., and BUSSEY, J., concur.