**Kenneth Eugene SUTTON, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–76–383.**

Court of Criminal Appeals of Oklahoma.

Jan. 13, 1977.

Richard A. Hoffman, Public Defender, Tulsa County, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Joe Mark El-koukri, Legal Intern, for appellee.

## OPINION

BLISS, Judge.

Appellant, Kenneth Eugene Sutton, here-inafter referred to as defendant, was charged in the District Court, Tulsa County, Case No. CRF–75–1606, for the offense of Knowingly Concealing Stolen Property, After Former Conviction of a Felony. He was tried to a jury and convicted. Punishment was assessed at ten (10) years' imprisonment. From said judgment and sentence a timely appeal has been perfected to this Court.

Defendant presents several propositions of error on this appeal. The primary proposition deals with the refusal of the trial court to suppress the evidence which forms the basis of this case. Defendant duly moved for suppression, and was granted an evidentiary hearing thereon. At this hearing defendant presented the testimony of four witnesses plus his own. At trial these four witnesses as well as two others were called by the State. For purposes of brevity, we will merely summarize the substance of the testimony. John Harrell and Jesse Harrell, husband and wife, both testified at the hearing and at trial. They testified that they resided at 2423 North Pittsburg, Tulsa, Oklahoma. They both stated that they were experiencing marital difficulties and that on Saturday, July 5, 1975, Mrs. Harrell left home with their children. She stated that she took up residence temporarily in a motel, and that she was assisted in the move by the defendant who was a childhood friend. Mr. Harrell did not know at the time that Mrs. Harrell had moved out. However, when she failed to come home, Mr. Harrell became angry and on Sunday, July 6, 1975, he put additional padlocks on all the doors to their home. Mr. Harrell also stated that he believed his wife to be having an affair with the defendant.

On Monday morning, suspecting that his wife would come home to pick up clothing, Mr. Harrell decided to "lay in wait" for her. He drilled a "peep" hole in his garage door so that he could view the front of his home without being seen. He then sat down inside the garage and waited, a shotgun in his hand.

Soon thereafter, a car pulled up. In it were the defendant, who was driving, Mrs. Harrell who was sitting on the console between the two bucket seats, and another man sitting in the front passenger seat. The man on the passenger side got out and approached the front door. When he saw the padlock he returned to the car and talked with his companions. Defendant and Mrs. Harrell then got out and all three proceeded to re-examine the lock. They then moved around the house to a rear door and found it similarly locked. At this point Mr. Harrell stepped out from a rear door to the garage and confronted them, ordering them to stand still. All ran. Mr. Harrell fired a shot into the ground in the direction of the man who had been sitting in the passenger seat. This man vaulted a fence and disappeared. Mrs. Harrell and the defendant stopped running when they heard the shot. The defendant attempted to take the gun away from Mr. Harrell and the shotgun discharged again. Mr. Harrell struck the defendant in the head several times with the gun before subduing him. The defendant was then marched to the front of the house. At about this time the

police arrived in response to a "shots fired" call.

Officer Joe Day, who testified at both the hearing and the trial, stated that he was the first officer on the scene. With drawn revolver, he ordered Mr. Harrell to lay aside his shotgun. Mr. Harrell complied. Officer Day then tried to ascertain what the problem was. After learning the basis of the dispute and the subsequent events, he asked the defendant if he wished to charge Mr. Harrell with assault and battery. The defendant declined to do so. Officer Day then asked Mr. Harrell if he wished to charge the defendant with trespassing. Mr. Harrell replied that he did not know.

Meanwhile, three other Tulsa Police Officers had arrived, including Officer Thomas Fultz. Fultz' testimony, both at the hearing and at the trial, indicated that when he arrived he too first tried to learn what had happened. He stated that he then investigated the backyard and that as he was coming back around to the front yard he saw the defendant being led by an officer from the front porch toward the curb. Officer Fultz testified that upon seeing this he proceeded toward his patrol car with the intent of calling a wrecker and having the defendant's car towed. He stated that he did this because he believed that the defendant had been arrested. It is also at about this time that the various witnesses seemed to agree that Mr. Harrell changed his mind and decided to press charges for trespassing. Officer Day testified that he had Mr. Harrell place the defendant under arrest, although Mr. Harrell's testimony does not bear this out.

Officer Fultz stated that as he proceeded toward his radio car he glanced into the interior of defendant's car and saw therein a pistol, which was laying in the opened console. He reached in and pulled out the pistol, saying "look what I found." Officer Day, who knew defendant to be a convicted felon, then rearrested the defendant for carrying a concealed weapon, after former conviction of a felony. Defendant was given his Miranda rights, was handcuffed and placed in a patrol car. At this point Officer

Day asked the defendant for permission to search the rest of defendant's vehicle. Officer Day and some of the other witnesses claimed that defendant's response to this was to toss the keys to Officer Day and reply, "go ahead you'll just get a warrant anyway."

In searching the trunk Officer Day discovered several shotguns which form the basis of the present charge of knowingly concealing stolen property. At trial the State presented two witnesses who did not testify at the hearing. Granville Strovell testified that his home was burglarized over the Fourth of July weekend, 1975, while he was away, and that several shotguns were taken. He further stated that the shotguns shown to him by the prosecutor were the ones removed from his home.

Kathryn Fell was also called by the State at the trial. She testified that through an agreement she was to keep watch over Mr. Strovell's home while he was away, and also that she was to feed his cat. Upon going into the Strovell residence on July 5, 1975, she noticed that all was in order. When she entered the residence on July 6, the house was in disarray and the rear door was broken. She stated that she then called Mr. Strovell and told him of this.

Additionally, Officers Day and Fultz at trial each identified the shotguns presented as State's Exhibits Nos. 1 and 2 as the ones removed from the defendant's car on July 7, 1975. Testimony was also introduced by these officers and by Mr. and Mrs. Harrell which tended to prove that the defendant had possession of this car when the guns were seized.

The defendant did not testify at the trial. At the evidentiary hearing he did testify, however, and his testimony as to the chain of events on July 7 was largely corroborative of all of the other witnesses' accounts. However, he denied ever giving the keys to Officer Day and claimed that he had left them on the dash of the car. He also denied ever giving consent to the search.

[1] At the evidentiary hearing the trial judge ruled that the pistol found in the car would have to be suppressed. He said that

he did this largely on the testimony of Mrs. Harrell, who stated that when she arrived at her home on that date she was sitting on the console and it was closed. This was corroborated by her husband who testified that he was watching when she arrived. Implicit in his finding was that the console which Officer Fultz claimed was open, revealing the pistol, was actually closed. This type of search could not be construed as incident to an arrest, *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), and thus the evidence garnered therefrom had to be suppressed.

■ Thus, if the search which produced the pistol was illegal defendant was illegally arrested at that time, and at the time he gave consent to search the rest of the car. The trial judge held, however, that this illegal arrest did not vitiate the consent to search given by the defendant. Defendant's motion to suppress the shotguns found in the trunk of the car was denied.

■ Defendant's first assignment of error is that the court erred in overruling defendant's motion to quash the information, on the grounds that defendant had been arrested for a misdemeanor (trespassing) when there is no evidence showing that a misdemeanor had been committed in an officer's presence. While this may very well be true, it must be noted that the information in this case does not touch at all upon the crime of trespassing but relates to an entirely different offense. Further, this Court has often said that the fact that the original arrest may have been illegal does not affect the jurisdiction of the court over the person of the accused, nor is it grounds for questioning the information. *Jernigan v. State*, Okl.Cr., 485 P.2d 778 (1971).

■ Defendant's second and third assignments of error are closely related, and they both seek to question the failure of the trial court to suppress the evidence which formed the basis of the present case. Defendant's theory is that the shotguns which were discovered in the search of the trunk of defendant's car were seized incident to what the trial court found to be an illegal

arrest, and they were thus "fruit of the poisonous tree," and therefore suppressible. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The State's contention on this appeal is that the consent to search given by the defendant after his illegal arrest but prior to the second search was voluntary, and it therefore so attenuated the relationship between the prior illegality and the subsequent search as to remove from the latter the taint of the former. *Nardone v. United States*, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939). This is but another way of saying that the State may use evidence seized pursuant to an illegal arrest provided that the State has not obtained the evidence by exploiting the prior illegality. *Stidham v. State*, Okl.Cr., 507 P.2d 1312 (1973). Whether such exploitation was present depends entirely upon the validity of the consent.

■ Whether or not there was consent, and whether such consent was given voluntarily, is a question of fact to be resolved in the first instance by the trial judge. Considerable weight must be given by this Court to a lower court's findings of fact in an evidentiary hearing on a motion to suppress evidence. This Court will not reverse the trial judge's ruling at such a hearing where it is based upon competent evidence reasonably tending to support the trial judge's finding. *Mahan v. State*, Okl.Cr., 508 P.2d 703 (1973); *Ruhm v. State*, Okl.Cr., 496 P.2d 809 (1972); *Luna v. State*, Okl.Cr., 481 P.2d 814 (1970). A review of the record and of the evidence presented therein leads us to conclude that there was ample evidence upon which the trial court could find as it did.

When examining the voluntariness of a consent, the Court must view the totality of circumstances surrounding its giving. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). However, it is obvious that the totality of circumstances surrounding the giving of consent is not the same totality which is presented before the trial court. This is but saying that the trier of fact can only make a determination upon the evidence which is

presented before it. In the present case five witnesses, including the defendant, testified at the evidentiary hearing on the motion to suppress. Three of these witnesses stated that defendant had given verbal permission to the officers to search his car. These witnesses also stated that defendant voluntarily gave his keys over to the officers. Further, the evidence shows that before this was done defendant was advised of his Miranda warnings, and was also told that he did not have to consent to the search.

■ We are not unmindful of the rather unique circumstances which led up to the giving of consent to search. Defendant had been assaulted with a shotgun and charged with trespassing when he patently was not. Subsequent to this, he was arrested and charged with possession of a pistol, after former conviction of a felony. Defendant argues that the coercion present can be found when considering the totality of the circumstances leading up to his giving consent. Thus, defendant argues, the fact that defendant was assaulted and arrested for trespassing, shot at and then rearrested when evidence was obtained through an illegal search, all point to a coerced consent. However, it must be borne in mind that the coercion upon which the Court must focus is that brought about by police conduct, and not the conduct of those acting in a non-official capacity. When viewed thusly the list of allegedly coercive factors is reduced down to the illegal arrest. The assault and arrest for trespassing which seems to have been made by Mr. Harrell were not actions of the police. Further, aside from the illegal weapons arrest defendant was unable to present any evidence which would show coercion. There were no drawn guns, threats or promises made. The fact that defendant may have been in an emotionally excited state was only partly a product of police action. And it is only to the coercive nature of the police action that the *Bustamonte* case speaks.

■ Furthermore, it may well be noted that when defendant testified at the hearing he denied giving any consent at all.

The effect of this denial was to deprive the trier of fact of a prime source of information relating to whether this consent was voluntary or not. As it stood at the hearing, there was considerable evidence tending to show voluntariness, and nothing other than the unique circumstances of this case to show coercion. Defendant cannot now come before this Court and say in effect, "I perjured myself at trial; I did give consent, but it was coerced." The time for raising this issue and presenting evidence thereon was at the hearing. Having failed to do so then, the defendant cannot raise it for the first time on appeal. *Daniels v. State*, Okl.Cr., 471 P.2d 475 (1970). The evidence being thus presented before the trial court, we cannot say that the decision rendered thereon was so manifestly wrong as to require reversal.

Defendant's fourth and fifth assignments of error deal with allegedly prejudicial remarks made by the prosecutor during the course of the trial. We find these contentions to be without merit, although several remarks and the objections thereto deserve comment.

Throughout his closing argument the Assistant District Attorney made reference to the fact that a very short time span had elapsed between the time when the guns were stolen, on July 5th or 6th, and the time when they were recovered from defendant's car on the morning of the 7th. The prosecutor commented to the jury, "I cannot come before you and prove each and every element that that man burglarized Mr. Strovell's house, but I am asking you to use your common good sense and follow the coincidences." (Tr. 228) Defense counsel had objected to a similar statement made just prior to this remark, and it had been overruled. Defendant's contention on this appeal is that this statement and statements of like import interjected "issues broader than guilt or innocence of the accused under the controlling law," which seriously prejudiced the defendant.

It is fundamental that the State was first required to prove in chief that the personal

property described in the information had been stolen and that the defendant knew it.

The Strovell's home had been burglarized and the personal property stolen from it. In his identification of the stolen property as belonging to him, the owner naturally described the manner in which his home had been broken into and entered, and the property. The breaking and entering and the theft of the personal property were inseparable and a comment on the burglary by the prosecutor was a fair and reasonable reference to the evidence in the case.

It has long been recognized that a prosecutor may fully discuss and argue the evidence, and any inferences which may reasonably be drawn therefrom. *Ford v. State*, Okl.Cr., 532 P.2d 89 (1975). In view of the short lapse of time between the burglary and defendant's arrest, we cannot say that the inference that defendant had committed the burglary was unreasonable.

Defendant also complains of the reference at trial by State's witness John Harrell to previously excluded evidence. However, the record clearly shows that this was an inadvertent comment that was in no way prompted by the prosecutor. Further, defendant's objection to the introduction of this statement was sustained. These factors lead us to believe that defendant's rights were not so seriously prejudiced as to require reversal. See, *Goodwin v. State*, Okl.Cr., 506 P.2d 571 (1973).

One other proposition of the defendant deserves comment. The prosecutor argued to the jury, "The time that is being wasted is your time here deciding this cause because this man wanted a trial." (Tr. 227) Of this remark, the defendant complains. However, inasmuch as the defendant's objection to this statement was sustained, and the jury admonished to disregard it, we find no reversible error.

For the reasons heretofore stated the judgment and sentence is *AFFIRMED*.

BRETT, P. J., dissents.

BUSSEY, J., concurs.