**Larry TOMLIN, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–90–0230.**

Court of Criminal Appeals of Oklahoma, Emergency Appellate Panel No. 8.

Feb. 16, 1994.

Allen Smith, Asst. Appellant Public Defender, Norman, for appellant.

Susan Brimer Loving, Atty. Gen., Jennifer B. Miller, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

LINDER, Judge:

Appellant, Larry Tomlin, was charged by informations filed December 21, 1988, in Cleveland County District Court, with Trafficking in Illegal Drugs, 63 O.S.Supp.1987, § 2–415 (CRF–88–1710), and Possession of a Firearm in the Commission of a Felony, 21 O.S.Supp.1982, § 1287 (CRF–88–1711). A bench trial was held July 27, 1989, before the Honorable Edward M. McDanel, District Judge. The trial court found Appellant guilty as charged, and on September 6, 1989, sentenced him to ten years' imprisonment and a $25,000 fine for the drug charge, and four years' imprisonment for the firearms charge. From these Judgments and Sentences Appellant now appeals. This panel reverses.

Numbers in parentheses refer to page citations in the Original Records of Cleveland County District Court Case Nos. CRF–88–1710 and CRF–88–1711; transcript of bench trial held July 27, 1989 (Tr. I); transcript of hearing held August 2, 1989 (Tr. II); and transcript of hearing held August 3, 1989 (Tr. III).

FACTS: The charges in this case stem from the seizure of sixty-one pounds of marijuana and two firearms during an inventory of Appellant's vehicle. The inventory was pursuant to Appellant's arrest for allegedly violating a Norman city ordinance against trespassing. Appellant was placed under citizen's arrest for trespassing by Garrick Ragon, a security guard employed to patrol the Robinson Crossing Shopping Center in Norman.

About 9 p.m. on December 20, 1988, Ragon was patrolling the Robinson Crossing Shopping Center when he noticed a blue station wagon with Arizona license tags driving through the center's parking lot. Ragon stopped the vehicle and asked the driver, Appellant, if he needed any help. According to Ragon, Appellant was acting irrationally. After talking with Ragon, Appellant voluntarily left the shopping center lot. (Tr. I 5–11).

A short time later, Ragon saw Appellant's car in the shopping center lot again. Ragon approached Appellant's vehicle and asked him to leave the premises. Appellant complied.

Approximately two hours later, Ragon left the area that he was employed to patrol and drove to a nearby 7–11 convenience store, where he spotted Appellant's vehicle. Ragon called Boyd Security, his employer, and asked that the Norman Police be notified, and then Ragon left. A short time later, Ragon again pulled into the 7–11 lot, and saw Appellant's car pulling in. (Tr. I 12–13, 19–20, 47). Ragon stopped Appellant and told him not to leave, that Appellant would have to explain his presence and actions to police. When Appellant protested, Ragon grabbed hold of Appellant's car and ordered him to stay.

Norman Police Officers Nicholson and Schultz arrived at the store in separate patrol cars. Nicholson spoke with Ragon, then approached Appellant and asked for identification. Appellant complied, and explained to Nicholson, as he had to Ragon, that he was working for Sergeant Hill of the Oklahoma City Police Department, taking down tag numbers for an investigation. (Tr. I 63, 82–83, 97–98).

Sergeant Schultz arrived and conferred with Nicholson and Ragon. (Tr. I 26–28, 112–13). As the officers approached Appellant's car a second time, they noticed an unloaded pistol lying on the passenger-side front seat. The officers drew their weapons and ordered Appellant out of the car. (Tr. I 67, 104, 117). After handcuffing and frisking Appellant, the officers instructed Ragon on how to make a citizen's arrest for trespassing. (Tr. I 29–31, 44–45, 86–87).

Ragon testified that he detained Appellant at the convenience store, a location not within the area of Mr. Ragon's employment, because he considered Appellant a suspicious character. (Tr. I 38). Ragon admitted at trial that Appellant had left the shopping center when he was asked to. (Tr. I 48). Ragon testified he told the Norman officers that Appellant was acting "irrationally." (Tr. I 27).

According to the officers, Ragon was interested in filing a complaint against Appellant, and the officers were debating whether to take Appellant into custody when they approached Appellant's car for the second time and saw the gun. (Tr. I 65–67, 101–04). The officers admitted that the pistol was being transported legally, and that they had no probable cause to arrest Appellant for any felony, nor had they seen him commit any other public offense in their presence. (Tr. I 63, 84, 86, 95, 117, 121).

Ragon testified that the idea of a trespassing charge did not occur to him until after he had conferred with Nicholson and Schultz; he was unsure who brought up the idea. Ragon testified that when he first conferred with the officers, they all agreed Appellant was acting somewhat strangely; but that was the gist of the conversation. Ragon testified that the officers suggested he make a formal citizen's arrest after they walked back to Appellant's car and spotted the gun. (Tr. I 27–30, 45–46, 64–65, 101–02, 114–15).

Following Appellant's arrest, the officers impounded his vehicle and conducted an inventory search in the parking lot of the 7–11 store. Three large containers, holding a total of sixty-one pounds of marijuana, and two rifles were found in the vehicle. (Tr. I 70–74, 125–144).

I–Appellant's first assignment of error is that because Appellant's arrest was illegal, the evidence obtained from his vehicle was illegally seized.

The evidence on which Appellant's convictions were based was obtained during an inventory search of his vehicle, pursuant to this arrest in the 7–11 parking lot for committing a trespass some hours earlier at another location, to-wit, at the Robinson Crossing Shopping Center. Appellant urges this arrest was illegal for a number of reasons. The trial court ultimately found that Appellant did not, in fact, commit a trespass. Nevertheless, the trial court concluded that Ragon's, and the Norman Police officers', actions were protected because they had all acted in "good faith" in effecting the arrest. This conclusion was error and the trial court also erred in refusing to suppress the evidence used against Appellant. We hold Appellant's convictions must be reversed with instructions to dismiss.

While the evidence in this case is detailed and somewhat confusing, the issues presented may be simply stated: (1) Is an arrest for

a misdemeanor offense legal, when the misdemeanor never occurred, when officers had no probable cause to believe that it occurred, and where the arrest was made by a private citizen at the suggestion and under the guidance of police officers? (2) Is evidence obtained pursuant to an illegal, warrantless, misdemeanor arrest otherwise admissible, because the arresting parties may have acted in good faith"? The answer to both of these questions is "No."

■ Under both federal and state constitutional law, all warrantless seizures are presumptively unreasonable. U.S. Const. amends. IV, XIV; *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); Okla. Const. art. II, § 30; *Lucas v. State,* 704 P.2d 1141, 1143 (Okl.Cr.1985). An arrest is a "seizure" within the constitutional prohibition against unreasonable seizures. See *Terry v. Ohio,* 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968). When a warrantless arrest is challenged, the State carries the burden of proving that the arrest was lawful. *Leigh v. State,* 587 P.2d 1379, 1383 (Okl.Cr.1978); *Greene v. State,* 508 P.2d 1095, 1100 (Okl.Cr.App.1973).

■ Although the search of Appellant's vehicle was termed an "inventory," its legality still rests on the legality of the arrest which led to the impoundment and inventory. *Patrick v. State,* 545 P.2d 819, 820 (Okl.Cr. 1976). A feigned or counterfeit arrest will not validate an inventory search. *Kelly v. State,* 607 P.2d 706, 708 (Okl.Cr.1980). If a warrantless arrest is a subterfuge and not justified by the facts, it cannot be justified by what evidence it produces. *Fields v. State,* 463 P.2d 1000, 1002–03 (Okl.Cr.1970).

■ In Oklahoma, a peace officer's right to arrest without a warrant is limited not only by federal and state constitutions, but by state statute as well. See *Jones v. State,* 88 Okla.Crim. 243, 202 P.2d 228, 230 (1949); 22 O.S.Supp.1987, § 196. A private citizen's right to make an arrest is even more limited. See 22 O.S.1981, §§ 202–03. Oklahoma law provides that a citizen may arrest another only when (1) a public offense has been committed or attempted in his presence; (2) the person arrested has in fact committed a felo-

ny, although not in his presence, or (3) a felony has been committed, and the arrester has reasonable cause to believe the arrested person committed it. 22 O.S.1981, § 202. One who makes a citizen's arrest

> must, before making the arrest, inform the person to be arrested of the cause thereof, and require him to submit, except when he is in actual commission of the offense or when he is arrested on pursuit immediately after its commission. 22 O.S.1981 § 203.

■ The dispositive issue in determining whether a felony arrest is legal is whether the arresting person had probable cause, or reasonable cause, to make the arrest. One may make a warrantless felony arrest based on information communicated to him by others, if that information provides reasonable cause for the arrest. *Stout v. State,* 693 P.2d 617, 622 (Okl.Cr.1984). The State is not bound to prove that a felony was actually committed in order to justify such an arrest; as long as reasonable cause existed to believe the person committed a felony, the arrest, whether by peace officer or private citizen, is valid, even though it may later turn out that no felony was committed. See *State v. Chronister,* 353 P.2d 493, 496 (Okl.Cr.1960); 22 O.S.Supp.1987, § 196(3), (4); 22 O.S.1981, § 202(3). Fruits of a search incident to such an arrest would generally be admissible. See *Davis v. State,* 377 P.2d 226, 228 (Okl.Cr. 1962). On the other hand, if the arrester did not have reasonable cause to believe the person committed a felony, the fruits of a search incident to the arrest are inadmissible. See *Greene v. State,* 508 P.2d 1095, 1097 (Okl.Cr. App.1973).

■ In contrast, a much stronger factual basis is needed to support a warrantless misdemeanor arrest. The law permitting warrantless arrests is more strictly circumscribed for misdemeanors than for felonies. *Heinzman v. State,* 45 Okla.Crim. 305, 283 P. 264, 265 (1930). By stature, neither a peace officer nor a private citizen may make a warrantless arrest for any offense other than a felony, unless the offense was committed or attempted in the arrester's presence. See 22 O.S.Supp.1987, § 196(1); 22 O.S.1981,

§ 202(1).[1] See also *Raymer v. City of Tulsa*, 595 P.2d 810, 812 (Okl.Cr.1979).

This Court held in *Ajeani v. State*, 610 P.2d 820, 822 (Okl.Cr.1980), that a peace officer may make a warrantless arrest for a misdemeanor based on his personal observations at the time, as long as the observations amount to probable cause for arrest; the arrest is lawful even though the arrestee may subsequently be acquitted of the charges. Citing other jurisdictions which have construed provisions similar to § 196, this Court explained that there is a "recurring concern" that officers not be hampered in the performance of their duties by the threat of civil liability, when the officers themselves make an honest, reasonable mistake about whether an offense was committed in their presence. Id.

But this court also made it clear in *Ajeani* that its decision was based on the fact that the conduct giving rise to the initial arrest was committed in the officers' presence. The same result cannot be reached where the officer relies on allegations of a misdemeanor related by another, or personally does not have information amounting to probable cause to make the arrest. See *Ajeani*, 610 P.2d at 823 ("This is not to say that mere suspicion or subterfuge will justify a warrantless misdemeanor arrest; nor will information supplied by a third party suffice"). See also *Shirey v. State*, 321 P.2d 981, 987 (Okl.Cr.1958), (officer may not make warrantless misdemeanor arrest based solely on information from a third party); *Coverstone v. Davies*, 38 Cal.2d 315, 239 P.2d 876, 879, cert. den'd. 344 U.S. 840, 73 S.Ct. 50, 97 L.Ed. 653 (1952), (construing state statute similar to 22 O.S.Supp.1987 § 196, court held that misdemeanor arrest based on the complaint of another still requires the issuance of a warrant).

Turning to the case at bar, the record shows that Appellant never committed any offense in anyone's presence. No one, neither security guard Ragon, nor Norman Police Officers Nicholson or Schultz, possessed information sufficient to justify Appellant's arrest in the 7–11 parking lot for a misdemeanor offense.

■ Ragon's initial attempt to detain Appellant occurred when he stopped Appellant in the 7–11 parking lot, some two to two-and-one-half hours after Appellant voluntarily left the Robinson Crossing Shopping Center. (Tr. I 49–51). Ragon testified that when he saw Appellant's car at the convenience store, he stopped and ordered Appellant to stay until police came to the scene, not to arrest Appellant for "trespassing" or any other specific crime, but merely to "check him out" and "make sure he was okay." (Tr. I 13, 25–26, 36–39).

Ragon's initial detention of Appellant was not a valid citizen's arrest. Ragon failed to follow statutory procedure for such an arrest, specifically failing to tell Appellant why he was being detained. Appellant was not in actual commission of any crime when Ragon stopped him. He was in a convenience store parking lot, outside the area Ragon was employed to patrol. Nor had Ragon been immediately pursuing Appellant for "trespassing" or any other offense. See 22 O.S.1981, § 203.

Ragon himself admitted that he had no articulable reason for detaining Appellant at the convenience store. He testified he simply was "determined to keep him there until the police got there so they could just check him out to make sure he was okay." (Tr. I 36). Ragon said he was suspicious because he'd "been around Appellant's class of people before." (Tr. I 21, 38). When Norman Police arrived, Ragon told the officers that Appellant was irrational and dangerous. Ragon admitted he had no factual basis for believing Appellant was dangerous. He said it was "instinct" that led him to that conclusion. (Tr. I 42–43). Ragon's detention of Appellant was illegal because, not only did he fail to follow statutory procedure in effecting it, but he had nothing but suspicion on which to make it. See *Allen v. State*, 400 P.2d 463, 465–66 (Okl.Cr.1965) (private citizen's deten-

1. Recent amendments to § 196 allow a peace officer to arrest in factual situations, not applicable to this case, that might include a misdemeanor not committed in the officer's presence. See

22 O.S.Supp.1987 § 196(5), (6); *McKay v. City of Tulsa*, 763 P.2d 703, 707 (Okl.Cr.1988). No such provisions exist in the statute governing citizen's arrests. See 22 O.S.1981, § 202.

tion of defendant for suspicious acts, and transport of defendant to authorities without informing defendant of the cause for the detention, was an illegal citizen's arrest, and evidence obtained from search incident to the arrest was inadmissible).

The officers denied suggesting that Ragon make a complaint. Nicholson denied suggesting anything to Ragon, but Schultz admitted that Ragon was advised about what offense could be used as a basis for the complaint. (Tr. I 64–65, 101–02, 115). Ragon did not make his citizen's arrest until after Appellant had already been ordered out of the car, frisked and handcuffed. (Tr. I 44–45, 86–87). Ragon testified that he thought he was arresting Appellant for something the police had observed. (Tr. I 27–28, 45).

The officers admitted they had no probable cause to arrest Appellant themselves, because no crime was committed in their presence. They admitted that they might simply have overlooked the empty pistol on their first meeting with Appellant; in any event, the pistol was unloaded and in plain view, and was thus being transported legally. (Tr. I 86, 117). Appellant made no suspicious or aggressive movements, but rather was cooperative with the officers. (Tr. I 95).

█ The officers were understandably concerned about seeing the pistol, even though it was unloaded, and they could have made a cursory pat-down search of Appellant's person for concealed weapons. See *Terry v. Ohio*, 392 U.S. 1, 26, 88 S.Ct. 1868, 1882, 20 L.Ed.2d 889 (1968). Observation of the pistol alone did not give the officers reasonable cause to conduct anything more than an investigatory detention, and they admitted they had no cause, of their own knowledge, to make an arrest. Any detention beyond the cursory intrusion permitted by Terry is an arrest, and requires a finding of probable cause before it can legally be made. *Dunaway v. New York*, 442 U.S. 200,

209–14, 99 S.Ct. 2248, 2255–57, 60 L.Ed.2d 824 (1979).

█ No trespass was committed in the officers' presence, and they had no authority to arrest Appellant without a warrant even if Ragon had had a trespassing charge in his mind when the police arrived. See *Ajeani v. State*, 610 P.2d 820, 825 (Okl.Cr.1980); *Rainbolt v. State*, 97 Okla.Crim. 164, 260 P.2d 426, 428 (1953) (officer may not make a warrantless arrest on mere suspicion of a misdemeanor). Officer Nicholson admitted that, if he thought he had observed a trespass being committed at one place, and then hours later saw the suspect somewhere else, he would have felt compelled to seek a warrant. (Tr. I 95–96). Ragon admitted that Appellant voluntarily left the lot the first time, and that he voluntarily left the second time after being asked to leave. Thus, it appears no trespass was ever committed. (Tr. I 32–34).

█ A citizen's arrest made without cause is no better than an illegal police arrest; and the fact that a citizen made it does not insulate an officer to whom the arrestee is transferred. Even if Ragon had seen Appellant commit a trespass earlier, the officers had no authority to arrest Appellant in the 7–11 parking lot. *Ajeani*, 610 P.2d at 823.

The trial court agreed that Appellant did not, under Norman's Municipal Code, commit a trespass on the Robinson Crossing Shopping Center, because he left the area when asked to do so. (Tr. II 3–4). See also Defendant's Exhibit 3, copy of Norman Municipal Code § 15–605, regarding trespass. However, the trial court found that Ragon appeared to have acted in good faith in making his citizen's arrest, and that the police also appeared to have acted in good faith in believing Ragon's claim that a trespass had been committed. Therefore, the court concluded, the evidence obtained from the inventory of Appellant's car was not the fruit of an illegal arrest. (Tr. II 4–14).[2]

---

2. In concluding that the evidence in this case was admissible even though the arrest was illegal, the trial court referred to and relied on *Sutton v. State*, 558 P.2d 1193 (Okl.Cr.1977). (Tr. II 10–11). Although some of its facts are similar to those in the instant case, *Sutton* is distinguishable from the case at bar. *Sutton*'s holding that, despite the illegal arrest of the defendant for feloniously carrying a concealed weapon, the stolen property found inside his vehicle was admissible, was based on the fact

■ This rationale is flawed for two reasons. First, there is no "good-faith exception" to the rule excluding illegally-obtained evidence for warrantless misdemeanor arrests. The good-faith exception in the search-and-seizure context applies only in a very limited number of cases where officers, in good faith, rely on what appears to be a valid search warrant. See *United States v. Leon*, 468 U.S. 897, 919–21, 104 S.Ct. 3405, 3418–19, 82 L.Ed.2d 677 (1984). This court has refused to extend the exception to any other types of cases. See *Farmer v. State*, 759 P.2d 1031, 1032 (Okl.Cr.1988) (court refused to extend good-faith exception to consent searches); see also *Solis–Avila v. State*, 830 P.2d 191, 192 (Okl.Cr.1992). An officer's good faith in making a warrantless felony arrest is not an acceptable substitute for probable cause, regardless of where he gets his information. See *Castellano v. State*, 585 P.2d 361, 365–66 (Okl.Cr.1978); *Greene v. State*, 508 P.2d 1095, 1098 (Okl.Cr.App.1973). If good faith cannot save a warrantless felony arrest, surely it cannot save a warrantless misdemeanor arrest, where the need for a factual basis for the arrest is much greater.

Second, even assuming a good-faith exception to the exclusionary rule could apply to this case, the evidence belies a finding of good faith on the part of either Ragon or the police. Ragon detained Appellant on suspicion alone and admitted that the idea of a trespass had not entered his mind until Norman Police conferred with him. He was unfamiliar with the details of the ordinance itself and was instructed by the officers on how to make a formal citizen's arrest after Appellant had been handcuffed. A citizen who acts merely on suspicion, in total ignorance of the law, but under the suggestion and guidance of police, cannot be said to have acted in good faith. The officers, as well, had no factual basis for making such an arrest, because Appellant had left the shopping center when asked to do so. A police officer who arrests on the bare charge of a misdemeanor, without any facts to support the charge, or who suggests that a pretextual citizen's arrest be made to circumvent his own lack of probable cause, cannot be said to be acting in good faith.[3]

An illegal arrest renders inadmissible any evidence obtained pursuant to the arrest. See *Hunt v. State*, 601 P.2d 464, 466 (Okl.Cr. 1979), cert. den'd., 446 U.S. 969, 100 S.Ct. 2951, 64 L.Ed.2d 830 (1980). This so-called "exclusionary rule," prohibiting illegally-obtained evidence from being used against an accused, is not just a rule of evidence or procedure in Oklahoma. It is a matter of state constitutional magnitude, and has been for over seventy years. See Okla. Const. art II, § 30; *Turner v. City of Lawton*, 733 P.2d 375, 377–78 (Okl.1986), cert. den'd., 483 U.S. 1007, 107 S.Ct. 3232, 97 L.Ed.2d 738 (1987); *Michaud v. State*, 505 P.2d 1399, 1402–03 (Okl.Cr.1973); *Gore v. State*, 24 Okla.Crim. 394, 218 P. 545, 549 (1923); *Hess v. State*, 84 Okla. 73, 202 P. 310, 314–16 (1921).[4]

All of the evidence used against Appellant in this case was obtained during the inventory of his car pursuant to his arrest for trespass. That arrest was at best totally unfounded and at worst a subterfuge. Because all of that evidence must be suppressed, Appellant's convictions must be overturned and the cases must be remanded with instructions to dismiss.

II–Appellant's second assignment of error is the evidence used against Appellant should

---

that the defendant consented to the search. *Id.* at 1197–98.

**3.** The State contended at trial that the officers in this case had no duty whatsoever to determine whether probable cause existed for the arrest, because they were acting merely as agents of Ragon, a private citizen. (Tr. III 13).

**4.** At trial, the State contended that the exclusionary rule was inapplicable here because Ragon, a private citizen, initiated the arrest. (Tr. III 2–16). See *Coolidge v. New Hampshire*, 403 U.S. 443, 488–89, 91 S.Ct. 2022, 2049, 29 L.Ed.2d

564 (1971) (Fourth Amdendment applies to seizures made by government authorities, not to those made by private citizens). This argument is unpersuasive. Regardless of who made the initial arrest and when, the police conducted the search, not Ragon. The police had a duty to act reasonably from the moment they handcuffed Appellant and suggested Ragon make a citizen's arrest. Constitutional analysis of the reasonableness of a search conducted by police cannot be avoided simply because a private citizen was involved in the arrest, especially when, as here, the involvement was under police guidance.

have been suppressed because it was obtained pursuant to an unlawful impoundment.

■ Appellant was stopped, forcibly detained, and arrested on private property—a convenience-store parking lot. The impoundment and inventory of his vehicle took place there as well. Norman Police did not inquire whether the owner of the lot (or his agent) wished the vehicle to be removed. (Tr. I 87–88). Appellant asked permission to secure his vehicle and leave it parked at the convenience store until matters could be cleared up, but this request was denied. (Tr. I 88–89). Norman Police had no need, and no authority, to impound Appellant's vehicle on the property without consent of the property owner. Because the impoundment was improper, the evidence obtained therefrom must be suppressed, and Appellant's convictions must be reversed with instructions to dismiss.

Vehicle impoundments do not automatically offend constitutional guarantees against unreasonable searches, but neither are they exempted from them. Impoundment often involves nothing more than the police exercising "community care-taking functions" and following standard departmental guidelines in doing so. These care-taking functions include removing vehicles that pose a hazard to other traffic, or which are illegally parked. Inventory of the contents of these vehicles protects the vehicle owner as well as the police. See *South Dakota v. Opperman*, 428 U.S. 364, 369, 96 S.Ct. 3092, 3097, 49 L.Ed.2d 1000, (1976); *Cady v. Dombrowski*, 413 U.S. 433, 447, 93 S.Ct. 2523, 2531, 37 L.Ed.2d 706 (1973). Of course, impoundment is also warranted where the vehicle itself is evidence of a crime. See *Lee v. State*, 628 P.2d 1172, 1173 (Okl.Cr.1981).

A vehicle inventory is illegal if there was no need to impound the vehicle. See *Lee, id.* The State carries the burden of showing that the impoundment was made pursuant to standard and proper police department policy. Above all, the impoundment-and-inventory procedure must comport with constitutional principles pertaining to reasonable searches. *Satterlee v. State*, 549 P.2d 104, 109 (Okl.Cr.1976); *Fruit v. State*, 528 P.2d 331, 334 (Okl.Cr.1974).

The precise issues here are: Did Norman Police have authority, under the Norman Police Code, to impound Appellant's vehicle on a private parking lot after his arrest but without the consent of the owner of the lot? Even if they did, is such a seizure reasonable under the state and federal constitutions?

The record includes, as State's Exhibit 3, the portion of the Norman Police impoundment policy (Municipal Code § 20–701) that the State relied on to justify impoundment of Appellant's vehicle. That policy states in part:

(a) The City Police Department is authorized to remove and impound any vehicle to a public or private storage yard: ...

(7) when an officer arrests any person driving or in control of a vehicle for an alleged offense and the officer is by ordinance or state statute required or permitted to take and does take the person arrested before a duly-appointed judge....

The State contended at trial that subsection (a)(7) authorized impoundment of Appellant's vehicle from the 7–11 parking lot, because nothing in that subsection limits such impoundment to arrests made on public roads or highways. The State conceded that subsection (b) of Municipal Code § 20–701 specifically lists situations where Norman Police are authorized to impound a vehicle on private property, if they have written consent of the owner of the property. See State's Exhibit 3; Tr. III 16–17.

In *Lee v. State*, 628 P.2d 1172 (Okl.Cr. 1981), the defendant was arrested by Muskogee Police in a church parking lot for siphoning gasoline from a church bus. His vehicle, which was parked nearby in the lot, was impounded. A search of his vehicle produced stolen property. On appeal from defendant's conviction for Concealing Stolen Property, this Court found that the impoundment and search were illegal. *Id.* at 1173. In so holding, this Court noted that the "community care-taking functions" that justify vehicle impoundment were not implicated under the facts of the case: "Although the appellant was observed committing a crime, his car was in no way connected to the crime nor in a place which would constitute a traffic haz-

ard." *Id.* This Court also noted that the State had failed to produce any standard policy authorizing the Muskogee Police to impound a vehicle on private property. *Id.*

Appellant's confrontation with Ragon and the officers started and ended on private property. There was no "hot pursuit" ending on private property here. Ragon decided to detain Appellant on suspicion in the parking lot of a private business which was not even part of the property Ragon was paid to patrol.

In reversing cases where impoundment on private property after the driver's arrest was held improper, this Court has intimated that such impoundments might be warranted if made under "proper departmental policy." See *Lee,* 628 P.2d at 1173; *Kelly v. State,* 607 P.2d 706, 708 (Okl.Cr.1980). This Court has not gone so far as to hold that any impoundment is proper as long as it is made pursuant to a valid arrest. *Kelly,* 607 P.2d at 708. The validity of an impoundment pursuant to an arrest necessarily rests on the validity of the arrest; and if the arrest is a subterfuge or otherwise illegal, then the resulting impoundment is also illegal. *Id.* See also *Patrick v. State,* 545 P.2d 819, 820 (Okl. Cr.1976). The trial court here found that Appellant did not commit the offense for which he was arrested. The record indicates that the arrest may well have been a subterfuge.

Even assuming that Appellant's arrest was not illegal, no fair reading of Norman Municipal Code § 20–701 authorizes impoundment at any place simply because the driver is arrested and taken to jail. The provisions of ordinance subsection (a) refer to situations where the vehicle constitutes a traffic hazard on a public roadway or where the vehicle itself is evidence of a crime. Subsection (b) generally deals with other situations where the vehicle is parked on, or blocking, private property. See State's Exhibit 3.

The ultimate issue is not whether the impoundment might be authorized by some city ordinance. The issue is whether the search, authorized or not, was reasonable under the Fourth Amendment to the United States Constitution. See *Cooper v. California,* 386 U.S. 58, 61, 87 S.Ct. 788, 790, 17 L.Ed.2d 730 (1967). The impoundment of Appellant's car was not reasonable, because it was not necessary for performance of any "community care-taking function." The vehicle posed no traffic hazard and was situated on private property. The vehicle was not evidence of the offense of trespassing, the offense for which the arrest was purportedly made. Compare *State v. Shorney,* 524 P.2d 69, 71–2 (Okl.Cr.1974) (impoundment pursuant to valid arrest held proper, where city ordinance authorized removing arrestee's unattended vehicle from public road).

Because the impoundment of Appellant's vehicle was neither authorized under city ordinance nor constitutionally reasonable, the fruits obtained during the subsequent inventory must be suppressed, and Appellant's convictions must be reversed by this court with instructions to dismiss.

For the foregoing reasons, the judgment and sentences of the trial court are REVERSED.

DAYTON and RIFFE, JJ., concur.