**F I L E D**

**UNITED STATES COURT OF APPEALS**

**June 5, 2007**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

BRITT EDWARD KINZALOW,

      Defendant - Appellant.

No. 06-6223
(D.C. No. CR-05-122-1-F)
(W.D. Okla.)

ORDER AND JUDGMENT[*]

Before **KELLY**, **MURPHY**, and **O'BRIEN**, Circuit Judges.[**]

Defendant-Appellant Britt Edward Kinzalow appeals the district court's

denial of his motion to suppress evidence obtained during an inventory search of

his vehicle by Oklahoma City police on June 1, 2005. See United States v.

Kinzalow, 2005 WL 2978331, at *2 (W.D. Okla. Nov. 7, 2005). Mr. Kinzalow

entered a conditional guilty plea to one-count of being a felon in possession of a

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

[**] After examining the briefs and the appellate record, this three-judge
panel has determined unanimously that oral argument would not be of material
assistance in the determination of this appeal. See Fed. R. App. P. 34(a); 10th
Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

firearm, 18 U.S.C. § 922(g)(1), and was sentenced to 188 months' imprisonment followed by five years' supervised release. He now appeals the denial of his motion to suppress. See Fed. R. Crim. P. 11(a)(2) (conditional plea). Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

Background

On June 1, 2005, Oklahoma City police officers proceeded to a duplex apartment building to execute an arrest warrant for Miron Moaning ("Miron"), a known gang member wanted in connection with a drive-by shooting. Based on information provided by an informant, police believed that Miron was located at Apartment B of the duplex. The apartment had been rented by Loriel Soto (the girlfriend of Miron's brother). The police believed that Miron routinely carried a firearm and knew that the duplex was located within an area that had a high incidence of serious crimes including murder, rape, robbery, and manufacturing and trafficking in drugs.

When police arrived at the duplex, a Dodge truck was parked in the driveway and was the only vehicle present. As two officers approached the duplex, they observed Miron walking out of a back bedroom and into the living room area. When the officers entered, Miron left the living room and attempted to return to the bedroom. One of the officers, Officer Coniglione, followed Miron into the bedroom to effect an arrest. Officer Coniglione then observed what he

- 2 -

believed was a small plastic bag containing marijuana on a table beside the bed. The other officer, Officer Walsh, entered the duplex behind Officer Coniglione and immediately observed Antonio Moaning (Miron's brother), Ms. Soto, and Mr. Kinzalow sitting in the living room. To secure the premises, Officer Walsh ordered them to get on the ground and handcuffed them.

Because the officers did not possess a search warrant for the premises, they requested and obtained Ms. Soto's written permission to search the apartment for the weapon used in the drive-by shooting. During their conversation with Ms. Soto, she informed the officers that she did not like Mr. Kinzalow and did not like him hanging around her boyfriend because Mr. Kinzalow often had guns and drugs with him.

Thereafter, another officer, Officer White, removed Antonio Moaning, Ms. Soto, and Mr. Kinzalow from the apartment while Officer Coniglione searched the premises. During that search, Officer Coniglione found a handgun in a closet within the same bedroom where Miron had been arrested. He also found a set of keys on a table in the living room which had a small pill container containing eight diazepam (a controlled substance) pills. When the officer inquired to whom the keys belonged, Mr. Kinzalow responded that they were his.

Once outside, Officer White asked Mr. Kinzalow whether he had any guns, knives, drugs, or anything sharp that might poke the officer during the pat down. Mr. Kinzalow responded that he had a knife in his left pocket and an ounce of

marijuana in his right pocket. Officer White removed both items and completed the pat-down search. He thereafter arrested Mr. Kinzalow and placed him in the patrol car.

After Mr. Kinzalow was arrested, Ms. Soto informed the officers that she did not want his Dodge truck to remain at the duplex and that she had not invited Mr. Kinzalow to her apartment. She did not specifically request that the truck be impounded or file a trespass complaint. The officers testified that the bed of the truck was full of Mr. Kinzalow's personal effects and that the only way to secure the vehicle and the items it contained was to have it impounded. Thus, pursuant to Oklahoma City Police Department policy § 183.20(G), the officers impounded the truck for safekeeping. While the truck was still in the driveway of the duplex, the officers conducted an inventory search of the truck. The inventory search revealed marijuana and the firearms giving rise to the current charge.

## Discussion

The burden of establishing a Fourth Amendment violation lies with the defendant. United States v. Patterson, 472 F.3d 767, 775 (10th Cir. 2006). "When reviewing the denial of a motion to suppress, we accept the district court's factual findings unless clearly erroneous, and we review the evidence in the light most favorable to the government. However, we review de novo the ultimate determination of reasonableness under the Fourth Amendment because that is a

legal conclusion." United States v. Chavira, 467 F.3d 1286, 1290 (10th Cir. 2006) (citation omitted).

Mr. Kinzalow first argues that his initial detention was a violation of his Fourth Amendment right to be free from unreasonable searches and seizures, and thus the fruits of the inventory search of his truck, which would not have occurred but for the unlawful detention, should be suppressed. In Terry v. Ohio, 392 U.S. 1 (1968), the Supreme Court held that law enforcement officials may stop an individual in the absence of probable cause so long as the official is "able to point to specific and articulable facts" which lead the official to believe the individual might be involved in a criminal deed. Id. at 21-22. Thereafter, the Court extended the Terry rule to allow "protective sweeps"—a search of a home conducted incident to arrest and solely to ensure officer protection—based only on reasonable suspicion "that the area swept harbored an individual posing a danger to the officer or others." See Maryland v. Buie, 494 U.S. 325, 327 (10th Cir. 1990). We have since held that Buie also applies to "temporary seizures of persons (i.e. 'protective detentions')" because "the ability to search for dangerous individuals provides little protection unless it is accompanied by the ability to temporarily seize any dangerous individuals that are located during the search . . . ." United States v. Maddox, 388 F.3d 1356, 1362 (10th Cir. 2004).

The required level of suspicion required to effect a protective detention varies, however, depending upon the area in which the detention occurs. Where

an individual is in an area immediately adjoining the arrestee, the individual may be placed in temporary protective detention even in the absence of probable cause or a reasonable suspicion that the individual poses a threat to officer safety. See id. at 1362-63 (citing Thompson v. City of Lawrence, 58 F.3d 1511, 1517 (10th Cir. 1995)). On the other hand, where an individual is on the arrest scene but is not in an area immediately adjoining the arrestee, the individual may only be detained where officers possess a reasonable suspicion that the individual poses a danger. See id. at 1363.

In the instant case, the evidence in the record, viewed in the light most favorable to the government, leads us to conclude that Mr. Kinzalow was seated in an area immediately adjoining Miron Moaning when he was arrested. Thus, pursuant to Buie and Maddox, Mr. Kinzalow could be detained for officer safety purposes regardless of whether the officers possessed a reasonable suspicion that he posed a danger. Officer Walsh testified that when he entered Ms. Soto's apartment, Mr. Kinzalow was seated in an armchair to the south of a coffee table which was next to the doorway of the bedroom where Miron was eventually arrested. Aplt. App. at 64. While no scaled diagram is in the record, the distance between the bedroom and the living room was not great–in the time it took for the officers to quickly enter the apartment and make the arrest, Miron left the bedroom, entered the living room, turned around, and again entered the bedroom. See Aplt. App. at 47. Given the close proximity of the living room where Mr.

Kinzalow was seated to the bedroom where Miron was arrested, the officers' initial detention of Mr. Kinzalow was reasonable. Cf. Thompson, 58 F.3d at 1517 (deeming a temporary detention for officer safety purposes reasonable in the absence of reasonable suspicion based on the detainee's presence in the same business establishment as the arrestee); compare with Maddox, 388 F.3d at 1362-63 (holding that reasonable suspicion was required to detain an individual for officer safety reasons in a carport outside the dwelling where the arrest occurred).

Apart from his initial detention, Mr. Kinzalow also challenges Officer White's inquiry as to the presence of weapons and drugs on his person and the pat-down search that followed. Once a detention is deemed to have been legal at its inception, we look only to "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Maddox, 388 F.3d at 1368 (citing Terry, 392 U.S. at 20). "In that regard, this circuit has concluded that an officer may conduct a pat-down search (or 'frisk') if he or she harbors an articulable and reasonable suspicion that the person is armed and dangerous." United States v. Hishaw, 235 F.3d 565, 570 (10th Cir. 2000) (internal quotations omitted).

Here, Ms. Soto's comments to the officers to the effect that Mr. Kinzalow often had guns and drugs with him is sufficient, standing alone, to justify the pat-down search, but adding to Officer White's reasonable suspicion was the fact that narcotics had been discovered in the apartment, see United States v. Garcia, 459

- 7 -

F.3d 1059, 1065-66 (10th Cir. 2006) (basing a finding of reasonable suspicion, in part, on the fact that an officer "observed a baggie of what appeared to be methamphetamine lying near the door of the apartment"), a known gang member was present in the apartment, see id. at 1066-67, and the neighborhood in which the duplex was located was a particularly dangerous one, see United States v. Atlas, 94 F.3d 447, 450-51 (8th Cir. 1996) (officers had reasonable suspicion that a suspect was armed and dangerous in part because "the officers were responding to a call in a dangerous neighborhood"). Asking whether Mr. Kinzalow was in possession of any weapons or drugs before conducting the pat-down was also perfectly reasonable. See Maddox, 388 F.3d at 1368; see also Muehler v. Mena, 544 U.S. 93, 101 (2005) (questioning which does not prolong a detention is not a "seizure" within the meaning of the Fourth Amendment and does not require any additional suspicion).

The cases on which Mr. Kinzalow primarily relies are unavailing. Neither Ybarra v. Illinois, 444 U.S. 85 (1979), nor Leveto v. Lapina, 258 F.3d 156 (3rd Cir. 2001), stand for anything more than the proposition that a pat-down search for weapons must be based on a reasonable suspicion that the individual may be armed and dangerous and that mere presence at the scene, standing alone, may not give rise to such suspicion. As previously stated, however, in this case, Officer White acted under a reasonable suspicion that Mr. Kinzalow was armed and dangerous and that suspicion was based on more than mere propinquity. Thus,

Ybarra and Leveto are inapposite.  Last, Sibron v. New York, 392 U.S. 40 (1968), primarily concerns probable cause to arrest and the ability of officers to perform a search incident thereto.  While the Court in that case held that merely talking to a known drug dealer does not give rise to probable cause (or reasonable suspicion), see id. at 62-64, the officers here possessed more information than was present in Sibron and certainly had an objectively reasonable apprehension of danger.  In sum, neither Mr. Kinzalow's initial detention nor Officer White's subsequent pat-down or questioning were in violation of the Fourth Amendment.

Mr. Kinzalow's final argument is that police violated the Fourth Amendment when they impounded his Dodge truck and performed an inventory search of it, and thus the firearms found inside should be suppressed as fruit of the poisonous tree.  In order to comport with the Fourth Amendment, the impoundment of Mr. Kinzalow's truck must either have been sanctioned under Oklahoma law or fell within the public safety exception of South Dakota v. Opperman, 428 U.S. 364, 369 (1976).  See United States v. Rios, 88 F.3d 867, 870 (10th Cir. 1996).

Under Oklahoma law, "a car on private property cannot be impounded absent a request from the property owner or other specific authorization." McGaughey v. State, 37 P.3d 130, 143 (Okla. Crim. App. 2001).  While Ms. Soto did not specifically request that Mr. Kinzalow's vehicle be impounded, she did inform the officers that she did not want it sitting in front of her apartment.  See

Aplt. App. at 66. Moreover, Oklahoma City policy § 183.20(G) specifically authorizes police to impound vehicles "[w]hen the driver of a vehicle is arrested and the officer determines impoundment is needed." See also State v. Shorney, 524 P.2d 69, 71 (Okla. Crim. App. 1974) ("[M]unicipalities have the authority . . . to authorize their respective police departments to impound vehicles . . . when the driver of a vehicle is placed under arrest and taken into custody."). That policy makes no distinction between vehicles found on private and public property, and the officers in this case had a valid reason for impounding the vehicle—it was parked in a high crime area and Mr. Kinzalow's personal effects were readily accessible and vulnerable to theft. Thus, so long as Mr. Kinzalow was validly arrested—and we have held that he was—his truck could be impounded under Oklahoma law. See Tomlin v. State, 869 P.2d 334, 343 (Okla. Crim. App. 1994) ("The validity of an impoundment pursuant to an arrest necessarily rests on the validity of the arrest . . . ."). Because the impoundment of Mr. Kinzalow's truck comported with Oklahoma law, it was also reasonable for purposes of the Fourth Amendment.

When a vehicle is legally impounded, police may, following standardized procedures and in the absence of bad faith, perform an inventory search of the contents of the vehicle. See Colorado v. Bertine, 479 U.S. 367, 372 (1987).

Here, the officers followed Oklahoma City policy § 183.30[1] in performing an inventory search of the truck, and Mr. Kinzalow has not made the requisite showing of bad faith. Additionally, the police interests present in this case are identical to those justifying the inventory search in Bertine. See id. at 373 (explaining that the warrantless inventory search was justified by police interests in safeguarding the impounded property, preventing claims of theft, vandalism, or negligence, and averting any danger the property might pose to the police and others). Consequently, the inventory search was justified and reasonable.

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge

---

[1] Oklahoma City policy § 183.30 provides that, "All vehicles impounded will be subjected to a routine custodial inventory. The inventory will be conducted at the scene of the impoundment (whenever this can be reasonably accomplished) in the presence of the wrecker driver."