2010 OK CR 20

**Richard Zobon BAXTER, Appellant**

v.

**STATE of Oklahoma, Appellee.**

No. F–2009–687.

Court of Criminal Appeals of Oklahoma.

Aug. 23, 2010.

Richard Clark, Assistant Public Defender, Tulsa, OK, attorney for defendant at trial.

Jason Rush, Tammy Westcott, Assistant District Attorneys, Tulsa, OK, attorneys for state at trial.

Curtis M. Allen, Assistant Public Defender, TULSA, OK, attorney for petitioner on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Donald D. Self, Assistant Attorney General, Oklahoma City, OK, attorneys for respondent on appeal.

## SUMMARY OPINION

LEWIS, Judge.

¶ 1 Richard Zobon Baxter was tried by jury and convicted of Count I, Trafficking (Ecstasy) in violation of 63 O.S.Supp.2005, § 2–415(C); Count II, Trafficking (Cocaine) in violation of 63 O.S.Supp.2005, § 2–415(C); Count IV, Possession of Controlled Dangerous Substance (Cocaine) Without a Tax Stamp in violation of 68 O.S.2001, § 450.1; Count V, Possession of a Controlled Dangerous Drug With Intent to Distribute in violation of 63 O.S.Supp.2005, § 2–401(B)(2); Count VI, Possession of Drug Paraphernalia in violation of 63 O.S.Supp.2004, § 2–405; Count VII, Driving While Suspended in violation of 47 O.S.Supp.2004, § 6–303; Count VIII, Failure to Pay Taxes in violation of 47 O.S.Supp.2007, § 1151(A)(5); and Count IX, Failure to Carry Proof of Insurance in violation of 47 O.S.Supp.2006, § 7–606, all after former conviction of a felony, in the District Court of Tulsa County, Case No. CF–2007–4439.[1] In accordance with the jury's recommendation the Honorable Tom C. Gillert sentenced Baxter to sixty (60) years imprison-

ment and a fine of $60,000 (Count I); forty (40) years imprisonment and a fine of $25,000 (Count II); five (5) years imprisonment and a fine of $1000 (Count IV); fifteen (15) years imprisonment and a $15,000 fine (Count V); one (1) year in county jail (Count VI); a fine of $500 (Count VII); a fine of $250 (Count VIII); and seven (7) days in jail and a fine of $250 (Count IX). The sentences in Counts I and II run concurrently with each other, while the sentences in Counts V, VI and IX run concurrently with one another and consecutively to the other counts. Baxter appeals from these convictions and sentences.

¶ 2 Baxter raises one proposition of error in support of his appeal:

I. The trial judge violated Baxter's Fourth Amendment right to be free of unreasonable searches when he admitted evidence found during the search of the passenger compartment of Baxter's vehicle where Baxter had been arrested for traffic violations and was handcuffed and secured in a police officer's patrol vehicle.

¶ 3 After thorough consideration of the entire record before us on appeal, including the original record, transcripts, exhibits and briefs, we find that relief is required on Counts I, II, IV, V and VI.

¶ 4 Baxter claims that the trial court erred in denying his motion to suppress the evidence obtained from the search of his car. Police conducted a warrantless search of Baxter's car after he was arrested, handcuffed, removed from the vehicle and placed in a patrol car. The only justification in the record for the search is that it was incident to Baxter's arrest. This case falls squarely within the recent United States Supreme Court prohibition against this type of search. In *Arizona v. Gant,* —— U.S. ——, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), the Court reviewed a search incident to arrest after a traffic stop was conducted, and determined the search violated the Fourth Amendment. Discussing previous Supreme Court case law, and its interpretation by state and federal lower courts, the Court noted that in some

---

1. Count III was dismissed before trial.

instances courts upheld any vehicle search incident to an arrest even when the passenger compartment was not within the reach of the arrested person at the time of the search. The Court concluded that this interpretation allows an impermissibly broad scope for vehicle searches. The Court held:

> [P]olice [are authorized] to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search.
>
> Fn4. Because officers have many means of ensuring the safe arrest of vehicle occupants, it will be the rare case in which an officer is unable to fully effectuate an arrest so that a real possibility of access to the arrestee's vehicle remains. Cf. 3 W. LaFave, Search and Seizure § 7.1(c), p. 525 (4th ed.2004) (hereinafter LaFave) (noting that the availability of protective measures "ensur[es] the nonexistence of circumstances in which the arrestee's 'control' of the car is in doubt"). But in such a case a search incident to arrest is reasonable under the Fourth Amendment.

*Gant,* 129 S.Ct. at 1719.

¶ 5 The law does not support an argument that the search was justified because officers believed they might find relevant evidence connected to the arrest. Baxter was stopped and arrested for traffic violations. Nothing in the record suggests that officers had any basis to suspect any other crime was being committed at the time they began the search. The Supreme Court rejected such an argument under similar circumstances in *Gant:*

> [W]e also conclude that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." [citation omitted] In many cases, *as when a recent occupant is arrested for a traffic violation,* there will be no reasonable basis to believe the vehicle contains relevant evidence.

*Gant,* 129 S.Ct. at 1719. [Emphasis added].

■ ¶ 6 The State has the burden to show this warrantless search falls within a specific exception to the Fourth Amendment warrant requirement. *Burton v. State,* 2009 OK CR 10, ¶ 13, 204 P.3d 772, 776. Particularly in light of *Gant,* the State fails to meet this burden. The State offers several arguments to justify admission of the evidence.

■ ¶ 7 The State suggests that the arrest was the result of circumstances which developed after Baxter's arrest and passenger Cooke's removal from the car, before the search began. The State first argues that the marijuana was in plain view before the search began, justifying the search. The record does not support this claim. There was no evidence suggesting the marijuana was in plain view presented at any proceeding. Officer Margason testified at preliminary hearing, the hearing on the motion to suppress, and at trial that a bag of marijuana was in the console when he searched the car and that he found the baggie after he began the search. He testified at trial that he believed there was a lid on the console, and said, "I can't recall if it was open or shut, but my recollection is it was not shut." None of the officers present before and during the search testified either that they saw the marijuana or had the opportunity to see it before the search began. The plain view exception does not apply.

■ ¶ 8 The State argues that, when Officer Oelke asked passenger Cooke for her identification, he saw a large amount of cash ($1208) loose in her purse in a manner consistent with how drug dealers sometimes keep money, she had trouble speaking and was breathing rapidly, her hands were shaking and she was extremely nervous. The State suggests this evidence, along with the marijuana in plain view, provided probable cause to believe that illegal drugs were in the car and justified the search. As we discuss above, the record does not support the claim that the marijuana was in plain view. We are left with Cooke's nervousness and the cash. The record does not support any conclusion that the search was in any way predicated on Cooke's belongings or behavior. Oelke testified at the hearing on the motion to suppress and at trial that he did not make contact with Cooke or speak to her until after Baxter was under arrest. Oelke testi-

fied at trial that he knew Margason planned to search the vehicle incident to arrest when he spoke to Cooke, and he asked her to step out of the car because police do not conduct a search with someone in the car. Margason testified that he planned to search the car while Oelke was talking to Cooke and that he began the search after Oelke asked Cooke to step out of the car. The record shows that the officers planned to search the car before Oelke made his observations about Cooke.

■ ¶ 9 The State suggests that the search falls under the good faith exception. It does not. The good faith exception applies only to searches conducted with a warrant. *U.S. v. Leon,* 468 U.S. 897, 922, 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677 (1984). This was a warrantless search. The State also relies on *Hudson v. Michigan,* 547 U.S. 586, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006), to argue that the exclusionary rule should not apply here. *Hudson,* following *Leon,* discusses exclusion of evidence gained through an unlawful search conducted pursuant to a warrant. *Hudson,* 547 U.S. at 593, 126 S.Ct. at 2165. *Hudson* specifically notes there is a difference between unlawful searches pursuant to a warrant and "the fruits of unlawful warrantless searches." Hudson, *id.* When considering whether illegally obtained evidence should be excluded, the question is whether the illegal evidence was "come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963). Here, the evidence against Baxter was solely the result of the unlawful search, without any intervening occurrence which might attenuate the connection between the unlawful search and the evidence and thus dissipate the taint. *Wong Sun,* 371 U.S. at 488, 83 S.Ct. at 417.

¶ 10 The State apparently uses "good faith" not as a term of art, but as a measure of fairness. The State argues that the police relied on the law previous to *Gant,* which would have allowed a vehicle search under these circumstances,[2] and suggests that it is unfair to apply the current law in this case. The United States Supreme Court explicitly rejected this argument in *Gant.*

The fact that the law enforcement community may view the State's version of the *Belton* rule as an entitlement does not establish the sort of reliance interest that could outweigh the countervailing interest that all individuals share in having their constitutional rights fully protected. If it is clear that a practice is unlawful, individuals' interest in its discontinuance clearly outweighs any law enforcement "entitlement" to its persistence.

*Gant,* 129 S.Ct. at 1723.

■ ¶ 11 *Gant* was decided while this case was on appeal. The State claims without citation that this Court should not apply *Gant* retroactively, arguing that since the officers relied in good faith on the previous law there would be no deterrent value. This is not the standard for determining whether a ruling in a case should be retroactive. Newly declared rules of constitutional criminal procedure are applied to criminal cases pending on direct appeal. *Griffith v. Kentucky,* 479 U.S. 314, 322–23, 107 S.Ct. 708, 713, 93 L.Ed.2d 649 (1987). This is true even where the new rule is a clear break with past case law. *Griffith,* 479 U.S. at 328, 107 S.Ct. at 716. This Court has held a case adopts a new rule "when it breaks new ground or imposes a new obligation on the States or Federal Government, or, to put it differently, when the result was not dictated by precedent existing at the time the defendant's conviction became final." *Ferrell v. State,* 1995 OK CR 54, ¶ 5, 902 P.2d 1113, 1114, adopting *Teague v. Lane,* 489 U.S. 288, 301, 109 S.Ct. 1060, 1070, 103 L.Ed.2d 334, 349 (1989) (new constitutional rule not applied retroactively on collateral review). *Gant* is a newly declared rule of constitutional criminal procedure, and should be applied in this case.

¶ 12 The State argues that application of the law here would have no deterrent effect. Given the requirement, discussed above, that *Gant* must be applied to cases pending on direct appeal when it was decided, this argu-

---

2. This includes *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), and *Go-* *mez v. State,* 2007 OK CR 33, 168 P.3d 1139.

ment is misplaced. In addition, applying *Gant* will have a deterrent effect. It will confirm to law enforcement officers in Oklahoma the change in the law and serve as an example and an explanation of the reason law enforcement agencies must adapt their vehicle search practice to conform to the law in *Gant*.

¶ 13 The State finally claims the material would have been inevitably discovered during an inventory search when the car was impounded.[3] Illegally obtained evidence may be admissible if the prosecution can establish by a preponderance of the evidence "that the information ultimately or inevitably would have been discovered by lawful means...." *Nix v. Williams*, 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984). The State asserts without citation that Baxter's car was subject to impoundment, and argues that if an impoundment is lawful, a subsequent inventory search is lawful and any evidence seized therein is admissible. *Horn v. State*, 1983 OK CR 152, ¶ 6, 671 P.2d 1163, 1164; *Lee v. State*, 1981 OK CR 59, ¶ 2, 628 P.2d 1172, 1172; *see also Skelly v. State*, 1994 OK CR 55, ¶¶ 16–17, 880 P.2d 401, 406–07 (lawful impoundment requires compliance with municipal ordinance governing impoundment on private property where vehicle was observed on public road but pulled into private parking lot for traffic stop).

¶ 14 The record does not support the State's claim that Baxter's Cadillac was subject to impoundment. In *Horn*, evidence showed officers lawfully impounded a vehicle pursuant to a valid municipal ordinance after the vehicle was stopped on a public street in the early morning hours. *Horn*, 1983 OK CR 152, ¶ 5, 671 P.2d at 1164–65. During the stop and search, Baxter's car was parked on private property, in a designated parking place. This Court has held that an impound is unlawful in the absence of evidence that the stopped vehicle itself is either connected to a crime or poses a traffic hazard, or that the impoundment is pursuant to proper police department policy. *Lee*, 1981 OK CR 59,

¶¶ 4–5, 628 P.2d at 1173. We found no justification for impoundment and a vehicle inventory search where the driver was arrested for a traffic violation and the car was legally parked on private property. *Kelly v. State*, 1980 OK CR 7, ¶ 5, 7, 607 P.2d 706, 707–08. Here, the initial arrest and the offenses for which Margason stated he planned to impound the car were all traffic offenses. No case law supports the argument that a traffic offense in and of itself connects the vehicle which is the subject of the stop to the crime such that it requires impound. No evidence at trial supports any claim that the Cadillac was a traffic hazard. No evidence was introduced regarding either an applicable municipal ordinance or a police department policy on impoundment and subsequent inventory. In the absence of any evidence suggesting that Baxter's car could be impounded or searched subsequent to that impoundment, there is no basis in the record to support a conclusion that the evidence in this case would have been inevitably discovered.

¶ 15 Police conducted an unlawful warrantless search of Baxter's car after a traffic stop under *Gant*. *Gant* applies to this case. There is no other independent justification for the search. Baxter's convictions in Counts I, II, IV, V and VI are reversed and remanded for proceedings consistent with this opinion.

### Decision

¶ 16 The Judgments and Sentences of the District Court in Counts I, II, IV, V and VI are **REVERSED** and **REMANDED** for further proceedings consistent with this opinion. The Judgments and Sentences of the District Court in Counts VII, VIII and IX are **AFFIRMED**. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2010), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

---

3. The State explicitly repudiated this theory below, stating in the Rule 6 hearing that this was not an impound search. The district judge at that hearing noted that "if we were focusing on simply the impound procedure and the inventory search under that procedure, then the State would fail."