FOURTH DIVISION
February 17, 2011

No. 1-09-3337

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 95 CR 34971 (02) |
| | ) | |
| VICTOR TRIPP, | ) | The Honorable |
| | ) | Matthew E. Coghlan, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE LAVIN delivered the judgment of the court, with opinion.
Presiding Justice Gallagher and Justice Pucinski concurred in the judgment and opinion.

**OPINION**

Here, we consider the second petition for postconviction relief of a defendant convicted of armed robbery. Following a jury trial, defendant was sentenced to four concurrent terms of 55 years' imprisonment for armed robbery in violation of section 18–2 of the Criminal Code of 1961 (720 ILCS 5/18–2 (West 1992)). As grounds for relief, defendant contends that the trial court erred in denying him leave to file a successive postconviction petition in light of the United States Supreme Court's decision in *Arizona v. Gant*, __ U.S. __, 129 S. Ct. 1710 (2009). For reasons detailed below, we affirm the trial court.

BACKGROUND

On November 29, 1995, defendant and two others robbed a jewelry store located in

southwest Chicago at gunpoint. Prior to trial, defendant filed a motion to quash his arrest and suppress evidence, arguing that the officers lacked probable cause to search a footlocker found in the backseat of defendant's car at the time of his arrest. At a hearing on the motion, defendant testified that he was standing at the corner of Douglas Boulevard and Sawyer Street in Chicago speaking to Germaine Johnson, a codefendant. Defendant testified that he was legally parked on Sawyer, facing south on the east side of the street, near the curb, approximately 10 feet from the intersection. Defendant and Johnson talked on the corner for approximately 40 minutes before police arrived. Defendant was about 12 feet from his car when he was arrested and was never in the car while police were at the scene.

The State called officer Michael Soto, who testified that he was on patrol with his partner driving southbound on Sawyer near the intersection of Douglas when he observed a car obstructing traffic on Sawyer. The car, occupied by two black males, was parked in the middle of the street. Officer Soto activated his car's emergency equipment, exited the car, and approached the driver's side of the other car. Officer Soto asked the driver of the car, later identified as defendant, for his license and proof of insurance. When defendant stated he did not have those items, Officer Soto asked him to exit the vehicle and placed him under arrest. After defendant exited the vehicle, with his passenger still in the front seat, Officer Soto noticed a handgun between the two front seats. Officer Soto's partner then instructed the other passenger, later identified as Johnson, to exit the car and both were handcuffed and placed in the officers' squad car. After Officer Soto seized the weapon, he performed a search of the car and recalled that defendant and Johnson partially fit the description of two of the three people who had robbed a

2

jewelry store earlier that day. When Officer Soto searched the car, he discovered gray duct tape, similar to the type used to bind the victims of the robbery, and a large footlocker. Officer Soto and his partner removed the footlocker, pried open its side and saw "numerous amounts of jewelry." Officer Soto also recovered $1,000 in currency, a gold money clip, a gold chain, and several keys from defendant. Officer Soto's partner recovered a gold chain and two gold medallions from Johnson. After hearing the parties' arguments, the trial court denied the motion to suppress, finding that the officers had probable cause to search the car.

On direct appeal to this court, defendant asserted that the trial court erred in denying his motion for a directed finding and his motion to suppress, and that his sentence was excessive, all of which were rejected by this court in a published opinion. *People v. Tripp*, 306 Ill. App. 3d 941 (1999). Shortly thereafter, our supreme court denied defendant's petition for leave to appeal. *People v. Tripp*, 185 Ill. 2d 661 (1999). Defendant then filed a *pro se* postconviction petition asserting that this court erred when it considered new arguments presented by the State on appeal which were not presented during his suppression hearing, and that his sentence was excessive and disproportionate to that of his codefendant. On May 9, 2000, the trial court determined that the petition was frivolous and patently without merit and was summarily dismissed pursuant to section 122–2.1 of the Post-Conviction Hearing Act (the Act) (725 ILCS 5/122–2.1 (West 2004)).

On September 1, 2009, defendant filed his second postconviction petition, claiming that his motion to suppress should be granted in light of the Supreme Court's holding in *Gant*. On

October 23, 2009, the trial court denied leave to file the petition on the basis that *Gant* does not apply retroactively to collateral proceedings. This appeal followed.

ANALYSIS

The sole issue on appeal concerns defendant's contention that the trial court improperly denied him leave to file a successive petition for postconviction relief in violation of the Act. Because the resolution of this issue requires the interpretation of a statute, our review is *de novo*. *People v. LaPointe*, 227 Ill. 2d 39, 43 (2007).

Defendant first contends that the trial court erred in denying him leave to file a successive postconviction petition based on the nonretroactivity of *Gant* because that determination was reserved for second-stage proceedings. Defendant relies on *People v. Boclair*, 202 Ill. 2d 89, 101 (2002), citing the proposition that because "time limitations in the Act should be considered as an affirmative defense and can be raised, waived, or forfeited, by the State," they are inappropriate grounds for dismissal in first-stage proceedings. This argument "ignores the fact that the Act treats successive petitions differently than initial petitions." *LaPointe*, 227 Ill. 2d at 44. While the Act permits collateral constitutional challenges to criminal convictions and sentences, the Act generally limits a petitioner to filing one petition. 725 ILCS 5/122–1 *et seq.* (West 2008); *People v. Holman*, 191 Ill. 2d 204, 209 (2000). Section 5/122–1(f) of the Act provides:

"Only one petition may be filed by a petitioner under this Article without leave of the court. Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice

results from that failure." 725 ILCS 5/122–1(f) (West 2008). The plain language of section 122–1(f) expressly conditions leave to file a successive postconviction petition on the petitioner's satisfaction of the cause-and-prejudice test. *LaPointe*, 227 Ill. 2d at 44. In *People v. Tidwell*, 236 Ill. 2d 150 (2010), the defendant filed a successive petition for postconviction relief but did not explicitly ask for leave of court to file a successive postconviction petition. Our supreme court held that "a successive postconviction petition is not considered 'filed' for purposes of section 122–1(f), and further proceedings will not follow, until leave is granted, a determination dependent upon a defendant's satisfaction of the cause-and-prejudice test." *Tidwell*, 236 Ill. 2d at 161. Our supreme court concluded that the trial court properly performed the review called for by section 122–1(f), *i.e.* the cause-and-prejudice test, by "enter[ing] a thorough and reasoned order, denying leave to file the successive postconviction petition, based upon the contents of the petition submitted." *Tidwell*, 236 Ill. 2d at 162. In other words, "there was no jurisdictional bar to the circuit court's *sua sponte* ruling on the matter." *Tidwell*, 236 Ill. 2d at 162.

Here, defendant filed a motion seeking leave to file a successive postconviction petition based on *Gant*. The trial court considered, but ultimately rejected defendant's allegations, concluding that defendant failed to satisfy the cause-and-prejudice test. In our view, the trial court conducted its analysis of defendant's successive postconviction petition as required by section 122–1(f) of the Act. We thus turn to the merits of the circuit court's ruling on cause and prejudice.

Section 122–1(f) of the Act conditions leave to file a successive postconviction petition on the petitioner's satisfaction of the cause-and-prejudice test. To establish cause, petitioner must identify an objective factor that impeded his ability to raise a specific claim during his initial postconviction proceedings. 725 ILCS 5/122–1(f) (West 2008). Here, the State concedes that the *Gant* decision, coming nine years after defendant's initial postconviction petition, is indeed an objective factor that impeded his ability to raise the issue during the first petition. We thus turn to whether defendant has satisfied the prejudice prong of the cause-and-prejudice test.

To establish prejudice, defendant must show that the claim not raised during his initial postconviction proceedings so infected the trial that the resulting conviction violated due process. 725 ILCS 5/122–1(f) (West 2008). Defendant contends that he was prejudiced when the trial court admitted evidence obtained by the type of "search incident to arrest" that the Supreme Court in *Gant* condemned. The State responds that *Gant* introduced a new rule of criminal procedure, thus disqualifying it from being applied retroactively to matters on collateral review, and also argues that under the facts of this case, the *Gant* rule would not bar admission of the seized evidence because this is not a "search incident to arrest" case, specifically because this court on direct appeal found that the officers had probable cause to search the vehicle because of the presence of the gun in open view in the vehicle.

Our analysis of whether *Gant* introduced a new rule of criminal procedure is guided by the Supreme Court's decision in *Teague v. Lane*, 489 U.S. 288 (1989), adopted by our supreme court in *People v. Flowers*, 138 Ill. 2d 218, 237 (1990). New constitutional rules of criminal procedure

do not apply retroactively to cases on collateral review unless the new rule either: "(1) places certain kinds of primary, private individual conduct beyond the power of the criminal law making authority to proscribe, or (2) requires the observance of those procedures that are implicit in the concept of ordered liberty." *Flowers*, 138 Ill. 2d at 237 (citing *Teague*, 489 U.S. at 307).

The *Teague* Court explained that generally, "a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. [Citations.] To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." (Emphasis in original.) *Teague*, 489 U.S. at 301; *People v. Morris*, 236 Ill. 2d 345, 359 (2010). Moreover, " 'the fact that a court says that its decision is within the "logical compass" of an earlier decision, or indeed that it is "controlled" by a prior decision, is not conclusive for purposes of deciding whether the current decision is a "new rule" under *Teague*.' " *Morris*, 236 Ill. 2d at 360 (quoting *Butler v. McKellar,* 494 U.S. 407, 415 (1990)). Further, "a decision constitutes a new rule unless 'a state court considering [the] claim at the time [the] conviction became final would have felt compelled by existing precedent to conclude that the rule *** was required by the Constitution.' " *Morris*, 236 Ill. 2d at 360 (quoting *Saffle v. Parks,* 494 U.S. 484, 488 (1990)).

Applying these principles to *Gant*, we conclude that a new rule was created in that case. Generally, warrantless searches are "*per se* unreasonable" under the fourth amendment, subject to limited exceptions, such as a search incident to a lawful arrest. *Gant*, __ U.S. at __, 129 S. Ct. at 1716. This exception "derives from interests in officer safety and evidence preservation that are

typically implicated in arrest situations." *Gant*, __ U.S. at __, 129 S. Ct. at 1716. In *Chimel v. California*, 395 U.S. 752, 763 (1969), the Supreme Court held that a search incident to arrest is limited to "the arrestee's person and the area 'within his immediate control'-construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence."

The Supreme Court considered *Chimel*'s application to the automobile context in *New York v. Belton*, 453 U.S. 454, 460 (1981). There, a police officer stopped a speeding car in which the defendant was one of four occupants. *Belton*, 453 U.S. at 455. Suspecting that the occupants possessed marijuana, the officer ordered the four occupants out of the vehicle, placed them under arrest, and patted them down. *Belton*, 453 U.S. at 456. Without handcuffing the arrestees, the officer then separated the four occupants so they would not be in physical touching area of each other and searched the vehicle, including a jacket on the backseat, in which he found cocaine. *Belton*, 453 U.S. at 456. The Supreme Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile" and any containers therein. *Belton*, 453 U.S. at 460. The Supreme Court based this holding in large part on its generalization "that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within 'the area into which an arrestee might reach in order to grab a weapon or evidentiary ite[m].' " *Belton*, 453 U.S. at 460 (quoting *Chimel*, 395 U.S. at 763).

The Supreme Court applied the *Belton* rule in *Thornton v. United States,* 541 U.S. 615, 618 (2004), where a police officer attempted to pull over the defendant because his license plates did not match the car he was driving. Before the officer had the chance to pull him over, the defendant had parked in a parking lot and exited his vehicle. *Thornton*, 541 U.S. at 618. The officer accosted the defendant, asked if he could search him, and found drugs in his pocket. *Thornton*, 541 U.S. at 618. The defendant was arrested, handcuffed, and placed in the backseat of the patrol car. *Thornton*, 541 U.S. at 618. Incident to the arrest, the officer searched the defendant's car and found a handgun under the driver's seat. *Thornton*, 541 U.S. at 618. The Supreme Court stated that the *Belton* rule applies, even if an officer does not make contact with the arrestee until after he has left the vehicle, so long as the arrestee was a " 'recent occupant' " of the vehicle. *Thornton*, 541 U.S. at 623-24.

With this backdrop, we turn to the Supreme Court's decision in *Gant*, where the defendant was arrested for driving on a suspended license, handcuffed, and locked in a patrol car before police officers searched his car and found cocaine in a jacket pocket. *Gant*, __ U.S. at __, 129 S. Ct. at 1714. The Supreme Court, applying the *Chimel* justifications of officer safety and evidence preservation, first held that "*Belton* does not authorize a vehicle search incident to a recent occupant's arrest after the arrestee has been secured and cannot access the interior of the vehicle." *Gant*, __ U.S. at __, 129 S. Ct. at 1714. Additionally, based on Justice Scalia's opinion concurring in the judgment of *Thornton*, the Supreme Court also held that "circumstances unique to the automobile context justify a search incident to arrest when it is reasonable to believe

that evidence of the offense of arrest might be found in the vehicle." *Gant*, __ U.S. at __, 129 S. Ct. at 1714. In so holding, the Supreme Court admitted that this finding "does not follow from *Chimel*," but reasoned that in some cases, "the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein." *Gant*, __ U.S. at __, 129 S. Ct. at 1719.

Read in whole, *Gant* stands for the two-part proposition that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Gant*, __ U.S. at __, 129 S. Ct. at 1723. The Supreme Court articulated, "The experience of the 28 years since we decided *Belton* has shown that the generalization underpinning the broad reading of that decision is unfounded. *** The doctrine of *stare decisis* does not require us to approve routine constitutional violations." *Gant*, __ U.S. at __, 129 S. Ct. at 1723.

The *Gant* decision itself did not state that it was articulating a new rule, and the Supreme Court has not yet specifically held that *Gant* constitutes a new rule. However, Justice Alito, writing for the four dissenting justices, criticized the majority for overruling *Belton*'s "bright-line rule," which was reaffirmed by *Thornton* only five years prior to *Gant*, and replacing it with "a new two-part rule." *Gant*, __ U.S. at __, 129 S. Ct. at 1726 (Alito, J., dissenting, joined by Roberts, C.J., and Kennedy and Breyer (except as to Part II-E), JJ.). We agree with the four dissenting justices that *Gant* replaced *Belton*'s bright-line rule with a new two-part rule that

10

significantly curtails an officer's ability to search a vehicle incident to arrest.

Prior to *Gant*, police officers were permitted to search the passenger compartment of an arrestee's automobile contemporaneous to arrest, so long as the arrestee was a recent occupant of that vehicle. In contrast, *Gant*'s two-part rule limits an officer's ability to search a vehicle incident to a recent occupant's arrest where the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. This rule imposes new obligations on police officers prior to searching a vehicle incident to arrest. Similarly, courts enforcing the *Gant* rule must apply a new test, first determining whether an arrestee is within reaching distance of an automobile and also asking whether it was reasonable for an officer to believe the vehicle contained evidence of the offense of arrest. Based on these new requirements, we conclude that *Gant* introduced a new rule of law.[1]

_____

[1] While Illinois courts have not previously considered whether *Gant* introduced a new rule of law, our conclusion is supported by various other courts' reference to *Gant* as a "new rule." See, *i.e.*, *State v. Brown*, No. 28430–1–III, slip op. at __ (Wash. Ct. App. January 13, 2011) (the *Gant* decision "announced a new rule limiting the exception to the warrant requirement for searches incident to arrest); *United States v. Ferguson*, No. 09–5056, 2010 WL 3521992, at *2 (4th Cir. Sept. 9, 2010) (*Gant* court "set forth new rules governing warrantless searches arising out of vehicle stops); *Baxter v. State*, 2010 OK CR 20, ¶ 11, 238 P. 3d 934, 937 ("*Gant* is a newly declared rule of constitutional criminal procedure ***.").

Having reached this conclusion, we turn to whether the new rule should be applied retroactively to cases on collateral review. Retroactive application would only be appropriate if the new rule falls within one of the *Teague* exceptions. The first *Teague* exception is inapplicable, as the *Gant* rule does not legalize primary, private individual conduct and does not reinterpret a statute. Under the second exception, the *Gant* rule would apply if it represents a "watershed rule" of criminal procedure implicit in the concept of ordered liberty and central to the accuracy of a conviction. This exception should be narrowly construed. *Flowers*, 138 Ill. 2d at 242. Since *Teague*, the "Supreme Court has rejected every claim brought before it alleging that a new rule satisfies the requirements for watershed status." *Morris*, 236 Ill. 2d at 361. The only "watershed rule" identified by the Supreme Court was pronounced 16 years before *Teague* in *Gideon v. Wainwright,* 372 U.S. 335, 344-45 (1963), where the Supreme Court held that counsel must be appointed for any indigent defendant charged with a felony because the denial of such representation presents an intolerably high risk of an unreliable verdict. The Supreme Court has explained that the second *Teague* exception:

> " 'cannot be met simply by showing that a new procedural rule is *based on* a "bedrock" right. We have frequently held that the *Teague* bar to retroactivity applies to new rules that are based on "bedrock" constitutional rights. [Citation.] Similarly, "[t]hat a new procedural rule is 'fundamental' in some abstract sense is not enough." [Citation.] Instead, in order to meet this requirement, a new rule must itself constitute a previously unrecognized bedrock procedural element that is essential to the fairness of a proceeding.

In applying this requirement, we again have looked to the example of *Gideon,* and "we have not hesitated to hold that less sweeping and fundamental rules" do not qualify. [Citation.]' " (Emphasis in original.) *Morris*, 236 Ill. 2d at 363 (quoting *Whorton v. Bockting,* 549 U.S. 406, 420-21 (2007)).

The *Gant* rule, while certainly important, cannot be characterized as a profound and sweeping change to rules of criminal procedure which is essential to the fundamental fairness of criminal proceedings. This exception must be narrowly construed and we do not believe that the *Gant* rule established such a component of basic due process so as to fall within it. See *Flowers*, 138 Ill. 2d at 242. Warrantless searches were *per se* unreasonable prior to *Gant* and remain so in the aftermath of *Gant*. Rather than introducing a profound and sweeping change, *Gant* instead introduced a new rule regarding the already-existing limitations placed upon officers when conducting a search incident to arrest. Accordingly, the *Gant* rule does not represent a watershed rule of criminal procedure that requires retroactive application to cases on collateral review.

For the above-stated reasons, we hold that *Gant* does not apply retroactively on collateral review. Therefore, the trial court properly denied defendant leave to file his successive postconviction petition because defendant has not satisfied the prejudice prong of the cause-and-prejudice test.

Finally, even if we were to rule contrarily on the issue of whether *Gant* would apply retroactively on collateral review, defendant would not satisfy the prejudice test because on direct appeal, this court specifically determined that the police officers had probable cause to search

13

defendant's car after one of the officers observed a handgun in plain view in the car. *Tripp*, 306 Ill. App. 3d at 952 (citing *People v. Tingle*, 279 Ill. App. 3d 706, 715 (1996)) (once officer found the first gun, it was reasonable for officer to search the entire car for evidence of criminal activity)). Thus, this court has previously determined that the officers had probable cause to search defendant's vehicle, regardless of whether that search was incident to arrest. In light of this determination, defendant was not prejudiced by his failure to raise *Gant* because the search was upheld on independent probable cause grounds. "Under the law of the case doctrine, issues presented and disposed of by a reviewing court in a prior appeal are binding upon remand to the trial court and on subsequent appeal to the reviewing court unless the facts presented are so different as to require a different interpretation or a higher court has changed the law." *People v. Sutton*, 375 Ill. App. 3d 889, 894 (2007). Accordingly, had we determined that *Gant* applied to defendant's successive postconviction petition, he still would have failed to satisfy the prejudice element of the cause-and-prejudice test.

Affirmed.

1-09-3337

(Front Sheet to be Attached to Each Case)

| Please Use Following Form: | THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|---|---|---|---|
| | | ) | Circuit Court of |
| | Plaintiff-Appellee, | ) | Cook County. |
| Complete TITLE of Case | | ) | |
| | v. | ) | No. 95 CR 34971 (02) |
| | | ) | |
| | VICTOR TRIPP, | ) | The Honorable |
| | | ) | Matthew E. Coghlan, |
| | Defendant-Appellant. | ) | Judge Presiding. |

| Docket No.<br><br>COURT<br><br><br>Opinion Filed | No. 1-09-3337<br><br>Appellate Court of Illinois<br>First District, FOURTH Division<br><br><br>February 17, 2011<br>(Give month, day and year) |
|---|---|
| JUSTICES | JUSTICE LAVIN delivered the judgment of the court, with opinion.<br>Gallagher, P.J., and Pucinski, J., concurred. |
| APPEAL from the Circuit Ct. of Cook County. | Lower Court and Trial Judge(s) in form indicated in the margin:<br>The Honorable Matthew E. Coghlan, Judge Presiding. |

15

| | |
|---|---|
| For APPELLANTS, John Doe, of Chicago.<br><br>For APPELLEES, Smith and Smith of Chicago, Joseph Brown, (of Counsel)<br><br>Also add attorneys for third-party appellants or appellees. | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel. Indicate the word NONE if not represented.<br><br>Attorneys for **Petitioner/Appellant:**<br>Michael J. Pelletier, State Appellate Defender<br>Alan D. Goldberg,Deputy Defender<br>Rachel Moran, Assistant Appellate Defender<br>203 N. LaSAlle St., 24th floor<br>Chicago, IL 60601<br>312.814.5472<br>Attorneys for **Respondent/Appellee**:<br>Anita Alvarez, State's Attorney<br>Alan Spellberg, Douglas Harvath, Joseph M. Preiser, ASA's of Counsel<br>Room 309- Daley Center<br>Chicago, IL 60602 |