2014 OK CR 12

**The STATE of Oklahoma, Appellant,**

v.

**Kanton Damont THOMAS, Appellee.**

**No. S–2013–767.**

Court of Criminal Appeals of Oklahoma.

Sept. 17, 2014.

An Appeal from the District Court of Oklahoma County; the Honorable Glenn M. Jones, District Judge.

Matthew Sears, Assistant Public Defender, Oklahoma County Public Defender's Office, Oklahoma City, OK, counsel for defendant at motion hearing.

Thomas Schurr, Assistant District Attorney, Oklahoma City, OK, Counsel for State at motion hearing.

David W. Prater, Oklahoma Co. District Attorney, William R. Pierce, Assistant District Attorney, Oklahoma City, OK, counsel for appellant/state on appeal.

Paul M. Clark, Assistant Public Defender, Oklahoma County Public, Defender's Office, Oklahoma City, OK, counsel for appellee on appeal.

## OPINION

SMITH, Vice Presiding Judge.

¶ 1 Kanton Damont Thomas was charged with Count I, Possession of a Controlled Dangerous Substance (Marijuana) in violation of 63 O.S.2011, § 2–402, and Count II, Possession of a Firearm After Former Conviction of a Felony in violation of 21 O.S.2011, § 1283, in the District Court of Oklahoma County, Case No. CF–2012–5639.[1] Thomas moved to suppress the evidence against him, and a hearing was held on July 22, 2013. On August 2, 2013, the Honorable Glenn Jones denied the motion in part and granted the motion in part, suppressing evidence obtained as a result of the search of Thomas's cellular phone. The State timely appealed that Order under 22 O.S.2011, § 1053(5). The State raises four propositions of error in support of its appeal.

¶ 2 After his arrest for possession of a small amount of marijuana, officers searched Thomas's cell phone without his permission. They saw pictures of Thomas holding firearms, cash, and drugs, and used the information from those pictures to get a search warrant for the contents of the phone. The pictures formed the basis for the charge in Count II, that Thomas illegally possessed firearms after a former felony conviction.

■ ¶ 3 A review of the record shows the appeal is proper and review of the issue is in the best interests of justice. 22 O.S. 2011, § 1053(5); *State v. Pope*, 2009 OK CR 9, ¶ 3, 204 P.3d 1285, 1287.

¶ 4 Our decision in Proposition II resolves this case. In Proposition II the State argues that the trial court erred in finding that the search of Thomas's cell phone was an invalid warrantless search not within any exceptions. We review this decision for an abuse of discretion. *State v. Bass*, 2013 OK CR 7, ¶ 10, 300 P.3d 1193, 1196. An abuse of discretion is any unreasonable or arbitrary action taken without proper consideration of the facts and law pertaining to the issue; a clearly erroneous conclusion and judgment, clearly against the logic and effect of the facts. *Neloms v. State*, 2012 OK CR 7, ¶ 35, 274 P.3d 161, 170. As we noted, the initial issue is whether Thomas has a reasonable expectation of privacy in his cell phone contents. *State v. Marcum*, 2014 OK CR 1, ¶ 7, 319 P.3d 681, 683. The State concedes that Thomas has an actual, subjective expectation of privacy, which society is prepared to recognize as reasonable. *Champeau v. State*, 1984 OK CR 54, ¶ 11, 678 P.2d 1192, 1195–96; *Bass*, 2013 OK CR 7, ¶ 5, 300 P.3d at 1195.

■ ¶ 5 Warrantless searches are unreasonable under the Fourth Amendment unless they fall under "a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). The State argues that the officers' initial search of Thomas's phone was lawful as a search incident to arrest. A search incident to arrest may include the suspect's person and the area within his immediate control, where he could reach a weapon or destroy evidence. *Arizona v. Gant*, 556 U.S. 332, 339, 129 S.Ct. 1710, 1716, 173 L.Ed.2d 485 (2009), quoting *Chimel v. California*, 395 U.S. 752, 763, 89

1. Thomas had earlier received deferred sentences in Oklahoma County Case No. CF–2011–5826 for trafficking in illegal drugs; and in Oklahoma County Case No. CF–2010–185 for possession of marijuana within 2000 feet of a school. The Honorable Kenneth Watson granted the State's application to accelerate these deferred sentences on March 18, 2013. This Court denied Thomas's appeal from this decision in *Thomas v. State*, Case No. F–2013–330 (Okl.Cr. Apr. 9, 2014) (not for publication).

S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969). This doctrine is designed to promote officer safety and prevent the destruction of evidence. *Gant*, 556 U.S. at 339, 129 S.Ct. at 1716; *Chimel*, 395 U.S. at 762–63, 89 S.Ct. at 2040. The United States Supreme Court recently considered the search of cell phones incident to arrest in two cases, and held that, absent exigent circumstances or some other exception, police must get a warrant before searching the data on a cell phone. *Riley v. California*, —— U.S. ——, 134 S.Ct. 2473, 189 L.Ed.2d 430 (2014).[2]

¶ 6 The State argues that, because a cell phone is a container and a search incident to arrest of a container is lawful, the search was lawful. The State relies on a broad reading of *United States v. Robinson*, 414 U.S. 218, 235–36, 94 S.Ct. 467, 477, 38 L.Ed.2d 427 (1973), arguing that any container found on an arrested person may be searched incident to the arrest, whether or not it might hold a weapon or contraband. In *Riley*, the Supreme Court rejected this argument and declined to extend *Robinson* to searches of data on cell phones. *Riley*, 134 S.Ct. at 2484–85.[3]

¶ 7 In *Riley*, the Supreme Court considered the characteristics of cell phones in the context of the *Chimel* exceptions— officer safety and preservation of evidence. The Court first noted that data stored on cell phones "cannot itself be used as a weapon to harm an arresting officer or to effectuate the arrestee's escape." *Riley*, 134 S.Ct. at 2485. Officers may examine the phone itself to ensure it cannot, physically, be used as a weapon, but once the officer has secured the phone, the data it contains is not a threat. *Id.* The Supreme Court also rejected the argument that cell phone data should be subject to search incident to arrest in order to prevent the destruction of evidence.

While acknowledging concerns regarding remote wiping of data and data encryption, the Court noted these concerns were both distinct from and broader than the *Chimel* focus on a defendant who might try to destroy evidence within his reach. *Riley*, 134 S.Ct. at 2486. In addition, the Court noted, law enforcement can seize and secure a phone to prevent the destruction of evidence, and has the means to prevent destruction of data on cell phones. *Riley*, 134 S.Ct. at 2486–87. The Court advised that any broader concerns regarding use of the data on a cell phone immediately after arrest should be addressed through established exceptions to the warrant requirement such as exigent circumstances. *Riley*, 134 S.Ct. at 2485, 2487–88.

¶ 8 Part of the rationale for a search incident to arrest is an arrestee's diminished expectation of privacy, but even with that diminished expectation, where the privacy concern is important enough, a warrant may be necessary. *Riley*, 134 S.Ct. at 2488. The Court rejected the State's argument that the search of cell phone data was materially indistinguishable from a search of other physical items, stating: "That is like saying a ride on horseback is materially indistinguishable from a flight to the moon. Both are ways of getting from point A to point B, but little else justifies lumping them together." *Id.* The Court discussed the various and versatile uses of cell phones, their immense storage capacity, their pervasive use and the highly personal nature of the data stored on each phone, all of which differ significantly from physical records and items that any person is likely to carry. *Riley*, 134 S.Ct. at 2488–91. Furthermore, the Court recognized that the data on a cell phone-the contents that officers wish to search-may be stored remotely, not on the device itself. Authorizing a warrantless search of data would thus resemble, as

---

2. This case was fully briefed in this Court on May 2, 2014, and counsel did not have the benefit of the guidance *Riley* gives this novel issue.

3. The State argues that the "fundamental difference" between the two cases is that *Robinson* addresses an item found on an arrestee, while *Gant, Chimel* and *Belton* concern objects within an arrestee's reach. On the contrary, the fundamental difference between these cases is that *Gant* was decided thirty-seven years after *Robin-*

*son.* This area of law has evolved significantly since 1973. At the time of the trial court's ruling in this case, *Gant* was the Supreme Court's latest ruling on the purpose and scope of searches incident to arrest. The State misses this elementary point when it argues that subsequent decisions following *Gant* ignore *Robinson*. One cannot view this jurisprudence in isolation. The Supreme Court's decision in *Riley* renders this argument moot.

the opinion puts it, "finding a key in a suspect's pocket and arguing that it allowed law enforcement to unlock and search a house." *Riley*, 134 S.Ct. at 2491. The Court rejected partial solutions to these concerns in favor of a bright-line test, easy for officers to understand and apply.

¶ 9 The trial court here, anticipating the decision in *Riley*, correctly found that Thomas's right to privacy in the contents of his cell phone precluded its search incident to his arrest. The trial court did not abuse its discretion in granting Thomas's motion to suppress the evidence gained from the illegal search. *Bass*, 2013 OK CR 7, ¶ 10, 300 P.3d at 1196.

¶ 10 In Proposition I, the State argues the evidence should not have been suppressed because officers only downloaded the pictures from Thomas's phone after they got a warrant, and there was probable cause for the warrant. The State notes that Thomas was walking in a high drug area, next to houses under surveillance for drug activity and for which police had search warrants, and that he possessed marijuana when he was stopped. The State contends that all this would have supported a finding of probable cause for the search warrant. However, the warrant itself explicitly states that, *while looking through Thomas's phone*, the affiant saw several pictures of Thomas holding crack cocaine, guns and cash. The affiant uses these photographs as the basis for the probable cause for the search warrant. The State tacitly admits that the affidavit relied solely on the warrantless, unconsented search, arguing only that it should not be void because the other information in the warrant could have established probable cause. While the other information might have established probable cause to arrest and search Thomas, it did not establish probable cause to search the contents of Thomas's cell phone. The State also relies on the fact that officers were about to serve warrants on the two residences. There is nothing in the record, other than the pictures on his phone, which directly connects Thomas to either residence, and those residence warrants cannot justify the search of Thomas's phone.

¶ 11 The State also argues that, even if the search warrant for the phone lacked probable cause (because it was based on the results of the unconsented, warrantless search), the evidence should not be suppressed because the officers relied on the warrant in good faith. The State inexplicably appears to argue that in cases dating back to 1992, this Court adopted the good faith argument (in fact, the State relies on the case in which the Court declined to adopt that doctrine, *Solis–Avila v. State*, 1992 OK CR 27, ¶ 4, 830 P.2d 191, 192). This Court adopted the good-faith doctrine in *State v. Sittingdown*, 2010 OK CR 22, ¶ 17, 240 P.3d 714, 718. However, the State offers no compelling reason to apply that doctrine here. Courts will not apply the exclusionary rule when officers act with an objectively reasonable belief that their conduct is lawful. *United States v. Leon*, 468 U.S. 897, 909, 922, 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677 (1984). This is not a question of a warrant based on stale information, or one which relied on an informant without establishing the informant's credibility. Rather, this warrant was explicitly based on the results of an illegal search. When this stop and search occurred, there was no binding appellate precedent which could have justified the search of Thomas's cell phone, so officers could not have acted in objectively reasonable reliance on previously settled law. *Davis v. U.S.*, —— U.S. ——, 131 S.Ct. 2419, 2428, 180 L.Ed.2d 285 (2011). The initial search of Thomas's cell phone was unlawful, and the good faith exception does not apply.

¶ 12 In Proposition III the State argues that the search was lawful under *Gant* and *Chimel* because officers were looking on the phone for evidence directly related to the crime for which Thomas was arrested. *Gant* included this exception, but stressed that it was appropriate given "circumstances unique to the vehicle context." *Gant*, 556 U.S. at 343, 129 S.Ct. at 1719. *Riley* emphasized the unique circumstances of that exception. *Riley*, 134 S.Ct. at 2484. Its subsequent discussion of the nature of cell phones starkly differentiates them from the vehicle search context, and *Riley* did not include this *Gant* exception in its clearly stated requirement that officers seeking to search cell phone

data should "get a warrant." *Riley*, 134 S.Ct. at 2495. Furthermore, nothing in the record supports this claim. Thomas was arrested for possessing a small quantity of loose marijuana in a pocket. That was a complete crime in itself, and needed no further investigation.

¶ 13 In Proposition IV the State argues that the district court erred in suppressing the evidence because police acted reasonably and no police misconduct occurred. The State argues generally that suppression of the evidence here would serve no purpose, because it would not deter police misconduct. This claim depends on whether the officers acted reasonably in searching the cell phone upon arrest. In fact, the officers' search of Thomas's cell phone without a warrant was unreasonable, and *Riley* is dispositive. *Riley*, 134 S.Ct. at 2495.

### DECISION

¶ 14 The Judgment of the District Court of Oklahoma County sustaining in part Appellee's Motion to Suppress is **AFFIRMED**. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2014), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

LEWIS, P.J., and A. JOHNSON, J., concur.

LUMPKIN, J., concur in results.

LUMPKIN, Judge: concurring in result.

¶ 1 I concur in the Court's decision to affirm the District Court's order suppressing evidence obtained as a result of the search of Appellee's cellular phone but write separately to address the following.

¶ 2 The United States Supreme Court's opinion in *Riley v. California*, —— U.S. ——, 134 S.Ct. 2473, 189 L.Ed.2d 430 (2014), controls this Court's determination of the present case. In *Riley*, the Supreme Court determined that an officer's warrantless search of data on a cell phone incident to arrest violated the Fourth Amendment to the United States Constitution. *Id.*, 134 S.Ct. at 2485–86. Absent other case-specific circum-

stances justifying a warrantless search, a warrant is required before an officer may search the data on a cell phone, even when incident to arrest. *Id.*, 134 S.Ct. at 2485, 2493–94.

¶ 3 In the present case, officers arrested Appellee for possession of a controlled dangerous substance, searched his phone incident to arrest, viewed certain photographs of Appellee stored within the phone's data and discovered evidence of a separate criminal offense. The officers' viewing of the contents of Appellee's cell phone constituted a search. As this search was warrantless and not supported by exigent circumstances, it was unlawful under *Riley*. *Id.*

¶ 4 The State argues for application of the good-faith exception to the exclusionary rule that the United States Supreme Court outlined in *United States v. Leon*, 468 U.S. 897, 920–21, 104 S.Ct. 3405, 3419, 82 L.Ed.2d 677 (1984). However, the good-faith exception does not apply to the circumstances of the present case.

¶ 5 Years ago this Court recognized that Article II, § 30 of the Oklahoma Constitution and the Fourth Amendment to the Federal Constitution contain almost exactly the same wording and in substance are identical in the rights protected. *State v. Sittingdown*, 2010 OK CR 22, ¶ 17, 240 P.3d 714, 718; *State v. McNeal*, 2000 OK CR 13, ¶ 10, 6 P.3d 1055, 1057; *Long v. State*, 1985 OK CR 119, ¶ 6, 706 P.2d 915, 916–17; *State v. Thomason*, 1975 OK CR 148, ¶ 14, 538 P.2d 1080, 1086; *DeGraff v. State*, 1909 OK CR 82, 2 Okla. Crim. 519, 103 P. 538, 541. Therefore, this Court follows the United States Supreme Court's precedent concerning the Fourth Amendment and, in particular, the good-faith exception to the exclusionary rule. *Id.; see Tomlin v. State*, 1994 OK CR 14, ¶ 33, 869 P.2d 334, 341 (recognizing the Court's repeated refusals to extend *Leon* good-faith exception beyond the parameters that the Supreme Court has outlined)

¶ 6 The extent of the good-faith exception is well defined. "The exclusionary rule is not applied when a law enforcement officer has conducted a search in 'objectively reasonable reliance' upon a search warrant issued by a magistrate and has abided by the terms of

the warrant even if the warrant is subsequently determined to be invalid." *State v. Sittingdown*, 2010 OK CR 22, ¶ 17, 240 P.3d 714, 718, *citing Leon*, 468 U.S. at 922, 104 S.Ct. at 3420. The good-faith exception turns on objective reasonableness. *Leon*, 468 U.S. at 923, 104 S.Ct. at 3421. In *Davis v. United States*, ―― U.S. ――, 131 S.Ct. 2419 180 L.Ed.2d 285 (2011), the Supreme Court listed those areas where the Court had extended he good-faith exception to similarly themed circumstances.

> *Illinois v. Krull*, 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987), extended the good-faith exception to searches conducted in reasonable reliance on subsequently invalidated statutes. *Id.*, at 349–350, 107 S.Ct. 1160 ("legislators, like judicial officers, are not the focus of the rule"). In *Arizona v. Evans, supra*, the Court applied the good-faith exception in a case where the police reasonably relied on erroneous information concerning an arrest warrant in a database maintained by judicial employees. *Id.*, at 14, 115 S.Ct. 1185. Most recently, in *Herring v. United States*, 555 U.S. 135, 129 S.Ct. 695, 172 L.Ed.2d 496, we extended Evans in a case where police employees erred in maintaining records in a warrant database. "[I]solated," "nonrecurring" police negligence, we determined, lacks the culpability required to justify the harsh sanction of exclusion. 555 U.S., at 137, 144, 129 S.Ct. 695.

*Id.*, 131 S.Ct. at 2428. The Supreme Court has also extended the good-faith exception to searches conducted in reasonable reliance on binding appellate precedent. *Id.*, 131 S.Ct. at 2434.

¶ 7 Turning to the seizure of Appellee's cell phone data, none of the objectively reasonable circumstances that the United States Supreme Court has recognized are present. After the officers viewed the phone's contents and discovered photographic evidence of the separate offense, the officers asked Appellee for consent to download the contents of the phone and Appellee declined. The officers then used their knowledge of the photographs on the phone to obtain a search warrant for the phone's contents and seized the data pursuant to the warrant. As the officers' initial viewing of the photographs on the cell phone was unlawful, the officers could not have acted in the objectively reasonable belief that their conduct did not violate the Fourth Amendment. *Leon*, 468 U.S. at 923, 926, 104 S.Ct. at 3421, 3422 (holding suppression is appropriate where officers could not have harbored objectively reasonable belief that the search warrant was valid).

¶ 8 In *Baxter v. State*, 2010 OK CR 20, 238 P.3d 934, this Court discussed application of the exclusionary rule. *Id.*, 2010 OK CR 20, ¶ 9, 238 P.3d at 937. The question is whether the evidence was " 'come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint' " *Id., quoting Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963).

¶ 9 In the present case, the evidence against Appellee was solely the result of the unlawful search of his cell phone's contents. The officers would not have known of the photographs without first conducting the illegal search of the phone's contents. Thus, the officers did not have any independent source for their knowledge of the separate offense and there was not any intervening occurrence which might attenuate the connection between the unlawful search and the evidence and thus dissipate the taint. *Wong Sun*, 371 U.S. at 487–88, 83 S.Ct. at 417. As the officers obtained the data from Appellee's cell phone through exploitation of the initial illegal search of the phone's content, the officers did not have an objective reasonable belief that the search warrant was valid and the District Court properly suppressed the phone's data.